NEBRASKA CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS ET AL., APPELLEES, v. COUNTY OF HALL, APPELLANT.

90 N. W. 2d 50

Filed May 9, 1958. No. 34325.

*Gerald B. Buechler* and *Rosemary L. Mara,* for appellant.

*Luebs & Elson* and *Howard E. Tracy,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This litigation concerns the problem as to whether or not property owned by Nebraska Conference Association of Seventh Day Adventists devoted to the payment of the expenses of the operation, upkeep, and improvement of a school owned and conducted by the Nebraska Conference Association of Seventh Day Adventists is

exempt from taxation by the State of Nebraska and its subdivisions.

The Nebraska Conference Association of Seventh Day Adventists and the Platte Valley Academy made application to the Hall County board of equalization June 22, 1955, that the real estate and personal property used by and for the support of the Platte Valley Academy in Hall County be determined to be exempt from taxation and that they be removed from the tax rolls of the county. It was asserted in the application that the property was owned and used by the Nebraska Conference Association of Seventh Day Adventists, the owner thereof, exclusively for educational and religious purposes; that it or any part thereof was not owned for financial gain or profit by either of the applicants or otherwise; and that the property was by the Constitution and laws of Nebraska exempt from taxation.

. The application was by the board of equalization of Hall County denied. The Nebraska Conference Association of Seventh Day Adventists prosecuted an appeal therefrom to the district court for Hall County. The trial court found that the Nebraska Conference Association of Seventh Day Adventists was the owner of the property involved, that the property was located in Hall County, and that it had been wrongfully ordered placed on the tax rolls and assessed for tax purposes by the authorities of that county. It was adjudged by the trial court that the property, real and personal, owned by the Nebraska Conference Association of Seventh Day Adventists used in the operation of the Platte Valley Academy in that county should be and it was adjudged to be exempt from taxation and that the assessment and levy thereof previously made was void. The appellant made a motion for a new trial which was denied.

The Nebraska Conference Association of Seventh Day Adventists is the sole appellee in this court and it will be herein so designated. The reason this is true is that

notwithstanding Platte Valley Academy was named as a party to the cause, it was in fact not one because it is not a legal entity but only a name used for convenience of a school operated by appellee as one of its activities. The sole appellant is County of Hall and it will be referred to in that manner.

Appellant had a change of county attorneys during the pendency of this litigation and its present legal officer who appears for appellant in this court, after the motion of the county for a new trial of the case was denied, made a motion on behalf of the county to vacate the judgment rendered herein for the reason that his predecessor in office had directed and conducted this litigation until the judgment had been rendered, that the succeeding county attorney had learned that no petition on appeal had been made or filed in the case by appellant in the trial court, and that therefore that court had not obtained jurisdiction of the cause. This motion was overruled and this appeal is prosecuted from the judgment rendered and the denial of the motion to vacate the judgment.

The procedure for an appeal to the district court from action of a county board of equalization is that prescribed for an appeal from a judgment of a justice of the peace court to the district court. § 77-1510, R. R. S. 1943; § 23-137, R. R. S. 1943; § 27-1303, R. R. S. 1943. The failure of an appellant to file a petition in the district court on or before 50 days after the entry of action taken by a board of equalization on the records of the county by the county clerk does not affect or defeat jurisdiction of the district court of the appeal. City of Seward v. Gruntorad, 158 Neb. 143, 62 N. W. 2d 537, decided: "The failure of appellants to timely file a petition in the district court does not affect or defeat jurisdiction." The authority of the court to relieve the litigant from his default in failing to file a petition within the time prescribed "on good cause shown" is repugnant to the idea that the filing of the petition is a juris-

dictional matter. § 27-1307, R. R. S. 1943. It has been determined that if a transcript is filed in a district court by the party taking an appeal as the statute requires on or before the 30th day after the rendition of a judgment by a justice of the peace court, the district court thereby acquires jurisdiction of the appeal from the judgment.

In Union P. R. R. Co. v. Marston, 22 Neb. 721, 36 N. W. 153, the court said: "Where a transcript is filed by either party on or before the thirtieth day after the rendition of the judgment, the court will thereby acquire jurisdiction of the case."

In Fulton v. Ryan Bros., 33 Neb. 456, 50 N. W. 430, the court concluded: "Where a transcript of a judgment rendered in a justice court is filed by either party in the district court within thirty days from the day of the judgment, the appellate court will thereby acquire jurisdiction of the case, although the transcript is not full and complete."

In Myers v. Hall County, 130 Neb. 13, 263 N. W. 486, the court declared: "The procedure on appeal from the county board is the same as on appeal from a justice of the peace. * * * Plaintiff gave notice of appeal and furnished an appeal bond in compliance with law and filed in the office of the clerk of the district court within 30 days a transcript of the proceedings of the county board. The district court thus acquired jurisdiction." See, also, In re Estate of Lindekugel, 148 Neb. 271, 27 N. W. 2d 169; In re Petition of School District of Omaha, 151 Neb. 304, 37 N. W. 2d 209; Anderson v. State, 163 Neb. 826, 81 N. W. 2d 219.

The district court for Hall County acquired jurisdiction of the appeal taken in this cause from the action of the board of equalization of that county and the failure of appellant in that court to timely file a petition therein did not affect the jurisdiction of the court. It was an irregularity but it was not a jurisdictional defect.

There was no petition filed in the case in the district court. The legal officer of Hall County until trial was had and the judgment was rendered and who acted therein for appellant testified on the hearing of the motion to vacate the judgment that it was the understanding of each of the attorneys who were in charge of the litigation that the case would be tried in the district court on the record "that came up from the Hall County Board of Supervisors." Later in the hearing he said: ". . . I know Mr. Luebs (the opposing attorney) and I always considered it would be tried on the transcript." Mr. Luebs, who was counsel for appellee, stated that he and the then county attorney discussed specifically the matter of trying the case in district court on the transcript and this was agreeable to the then county attorney; that on the day of the trial but before it commenced the judge who was to preside inquired if there were to be other pleadings in the case and Mr. Luebs in the presence of the then county attorney advised the court that by agreement the case was to be tried on the transcript; and that the then county attorney did not object or disagree with that statement made to the court. The judge who presided at the trial expressed his recollection that before it commenced he examined the court file in the case and inquired if there were to be other pleadings. One of the counsel informed the court that the case was to be heard on the transcript without additional pleadings and the other counsel acquiesced in that arrangement.

All parties interested in the litigation participated in the trial. The case was decided and judgment was rendered without objection or protest. The motion for a new trial made by appellant did not assign error because a petition on appeal had not been filed in the district court. It only complained that the judgment was not sustained by sufficient evidence and that it was contrary to law. The motion was denied and the case was finished in that court. It was 19 days later that a

motion was made to vacate the judgment on the basis that a petition on appeal had not been filed and that the district court had "thus not obtained jurisdiction in this cause."

The trial court was correct in denying the motion to vacate the judgment. The record supports the conclusion that the parties consented to waive new and additional pleadings in the district court and to proceed with the case on the basis of what the transcript contained. The parties to a cause appealed to the district court may waive or dispense with the filing of an additional pleading or pleadings in that court and may submit the case on the transcript of the proceedings had in the tribunal from which the cause was appealed, as they did by their statements and conduct in this case. Traill v. Ostermeier, 140 Neb. 432, 300 N. W. 375; Scheer v. Kansas-Nebraska Natural Gas Co., 158 Neb. 668, 64 N. W. 2d 333. The parties did proceed to trial and disposition of the case with full knowledge that a petition on appeal had not been filed and without objection or protest. It was only after a judgment unfavorable to appellant was rendered and after its motion for a new trial was denied that appellant made objections to and protest of the absence of a petition on appeal. That was much too late under the circumstances of this case. There is no substance to the argument of appellant in this regard.

Appellee is a nonprofit corporation connected with the Nebraska Conference of Seventh Day Adventists generally known as the denomination of Seventh Day Adventists. Appellee is a religious body of the denomination in charge of its churches in Nebraska and the operation of the school known as Platte Valley Academy hereafter referred to and described. The purpose of appellee is to hold title to the property of the Nebraska Conference of Seventh Day Adventists; to receive gifts, loans, and deposits of money; to acquire and hold title to any kind of property by gift or purchase; and to

do all lawful things that may be desirable or necessary as an incident to said matters.

Appellee has authority to maintain and conduct educational institutions of grammar and academic grades in harmony with the educational policy of the Seventh Day Adventists denomination and in connection therewith to maintain industrial and vocational departments, including farming, gardening, dairying, and general agriculture, under the direct supervision and control of the school management. The proceeds of the sale of any products or manufactured articles from the departments are required to be expended by the school in maintaining itself and improving its equipment and facilities. Appellee does not exist for gain. Its property is used and expended in performing the legitimate ends and aims of its existence but not for its profit or the gain of any individual or group. The affairs of appellee are managed, controlled, and directed by a board of seven trustees. Appellee has no stock or stockholders. It pays salaries only to the faculty members of the academy and wages to other employees needed in the actual operation of the activities conducted within the limits of the objects and purposes of its existence.

Appellee does and has for more than 35 years maintained and conducted a school known, for convenience, as Platte Valley Academy in Hall County a short distance east of the town of Shelton. The school is not a legal entity but an activity of appellee. It is not sectarian but it is a religious school. The school year is 9 months. The enrollment last year was 83 students.

The support of the school is met by amounts paid by students, the products of the farm hereafter discussed, gifts, and by contributions made by appellee to satisfy any deficiency. During the fiscal year June 30, 1954, to June 30, 1955, appellee paid on account of the expenses of the school operation a deficiency of $14,084.78 and the following fiscal year the amount contributed

for that purpose by appellee was $10,730.12. It has satisfied a substantial deficiency that has accrued in each year of the operation of the school. Appellee has not been required to pay any federal income tax.

The academy offers instruction in grades 9 to 12, both inclusive. The school offers vocational training for boys in the field of agriculture and farming mechanics and for girls there is offered instruction in home economics, bookkeeping, shorthand, and typing. Each student is required, as a condition of graduation, to have one unit of vocational training. The school offers instruction in other subjects appropriate to a school of its class. The industries in connection with the academy are farming, dairying, the operation of a laundry, and a cafeteria. The laundry or cafeteria does not serve the public. They are only for the benefit of the persons connected with the school. The students are encouraged to perform work on the farm, in the cafeteria, in the laundry, or in the dairy for the experience and training and to help defray their expenses in attending school. They are credited for work they do on the tuition charged them by the school. It is not required that an applicant for admission to the school be a member of the Seventh Day Adventists Church. Racial discrimination is not practiced. Any qualified person who will conform to the requirements of the school may be admitted. The cost to students for meals at the cafeteria are kept at a minimum and the cost thereof is decreased because of things grown on the farm operated in connection with the school. It would probably be impossible to operate the school if it did not have the benefits it receives from the farm.

There is no one who receives any pecuniary benefits from any of the uses to which the farm, the dairy, or the livestock are put except the school. The farm, the improvements on it, the livestock, the machinery, and equipment incident to it are used exclusively for the purposes of education.

The academy is an accredited school and it graduates students who meet its requirements. A graduate of the school is entitled to college entrance. The academy is in all respects on a par with public schools.

In the period commencing November 5, 1918, and continuing through March 23, 1954, appellee acquired several tracts of land in Hall County consisting of a total of 370 acres. The first land purchased was the north half of the southeast quarter of Section 31, Township 10 North, Range 12 West of the 6th P. M., in Hall County on which the academy is located. The area owned by appellee is a well balanced unit and a highly developed farm. It is irrigated by 7 wells. The farm is fully equipped for a successful operation. It has shops for the care and repair of its machines and for the upkeep of its buildings and facilities. The entire products of the farm and the proceeds of any part thereof that are sold are used and received by the school and are expended on the cost of its operation. The land, all it produces, and everything derived therefrom is used exclusively for educational purposes. This has been true since the first tract of land was acquired by appellee. As each subsequent purchase of land was made it became a part of the farm for the benefit exclusively of the school and has since been used only for that purpose. Substantially everything about the operation and activities carried on contributes to the training, education, and advantage of the students of the school.

The relevant constitutional provision relating to exemptions from taxation is in part as follows: "The Legislature by general law may exempt * * * property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user." Art. VIII, § 2, Constitution of Nebraska. The Legislature has by general law provided that property owned and used exclusively for educational, religious, or charitable purposes when not owned

or used for financial gain or profit to the owner or user shall be exempt from taxation. § 77-202, R. R. S. 1943.

This state is committed to the doctrine that in determining whether or not property is within a tax exemption provision, the use of the property and not the status or character of the owner of the property controls. In Academy of the Sacred Heart v. Irey, 51 Neb. 755, 71 N. W. 752, this court said: "It is the exclusive use of the property which determines its exempt character. If it is devoted exclusively to educational purposes, it is not liable to taxation, unless such use is not direct, but remote. * * * The sole constitutional and statutory requirement to create the exemption is that the property shall be devoted exclusively for school or some other specified exempt purpose * * *." See, also, Ancient and Accepted Scottish Rite v. Board of County Commissioners, 122 Neb. 586, 241 N. W. 93, 81 A. L. R. 1166; Mary Lanning Memorial Hospital Assn. v. Adams County, 117 Neb. 618, 221 N. W. 959; House of the Good Shepherd v. Board of Equalization, 113 Neb. 489, 203 N. W. 632.

Central Union Conference Assn. v. Lancaster County, 109 Neb. 106, 189 N. W. 982, considered these facts: Central Union Conference Association was an organization of Seventh Day Adventists and was engaged in religious and school work. Union College in Lancaster County was a part of the association and held title to the college grounds, buildings, equipment, farm lands, and dairy property used in connection with the educational institution. The county authorities subjected the farm lands and dairy property to taxation. The district court, upon an appeal of the matter to it, set aside the levy of taxation on the ground that the assessed property was used exclusively for school and educational purposes. There was an appeal to this court which was discussed and decided in this manner: "It is argued that the farm and the dairy are not used exclusively for school or educational purposes and that therefore the property assessed

is not exempt from taxation. Agriculture and dairying are subjects of instruction at Union College. The milch cows are fed on products of the farm. The dairy, if considered by itself, seems to be a source of profit. On this premise the argument against exemption is principally based. The farm and the dairy are forms of property used in carrying out a purpose of the school and are as useful for educational purposes as the equipment in class rooms. Some of the products from the dairy are used in other departments. The proceeds from the sale of milk and cream go into the general treasury of Union College from which all disbursements are made. Products of the dairy, therefore, inure to the benefit of the school as a whole and any profit therefrom is a mere incident of the general purpose for which school property is used. Outside of school purposes no one receives any pecuniary profit from the use to which the farm and dairy property is put. The better rule, one sanctioned by precedent, is that the property in controversy is used exclusively for school purposes within the meaning of the constitutional and statutory provisions relating to exemptions."

St. Elizabeth Hospital v. Lancaster County, 109 Neb. 104, 189 N. W. 981, was a contest as to the exempt character of the property of St. Elizabeth Hospital from taxation. The county officials levied taxes on the property. The district court, upon an appeal to it, set aside the levy on the ground of exemption of the property from taxation. This court therein said: "The Franciscan Sisters, a religious society, founded the hospital and hold title to its property. The Sisters of St. Francis of the Perpetual Adoration have charge of the institution. The general purpose of the sacred order to which these Sisters belong is to nurse the sick and take care of orphans. Twenty-six Sisters engaged in their life work are caring for the sick at St. Elizabeth Hospital. In devoting themselves to it they are prompted by the love of God. They are bound by a vow of poverty. Property owned by

them is used for the purposes to which they have dedicated their lives. Beyond food, clothing and shelter they receive nothing for their services. No individual, society or corporation receives any pecuniary profit from hospital property, funds or earnings. Surplus and donations are used to enlarge buildings and to improve hospital facilities, equipment and service. The institution is open alike to charity patients and others without regard to race or religious beliefs. Reasonable compensation is required from those who are able to pay it. Only a small percentage of those who seek rooms, food and hospital care, however, can be considered charity patients, but this does not change the charitable purpose for which the property as a whole is used, where no one receives any pecuniary profit from any source. * * * The better rule, one sanctioned by precedent, is that the property in controversy is used exclusively for religious and charitable purposes within the meaning of the constitutional and statutory provisions relating to exemptions."

House of the Good Shepherd v. Board of Equalization, *supra,* involved a laundry property consisting of real estate and a modern laundry equipped for doing general laundry work in competition with commercial laundries in Omaha. The considerable income from it was used to support the institution known as House of the Good Shepherd and its inmates. The district court decided the laundry property was exempt from taxation. The House of the Good Shepherd was organized by members of the religious and charitable order of the Good Shepherd to reform fallen women, to give protection to other females situated so that their virtue might be endangered, to surround them with virtuous influences, and to accustom them to habits of industry and self-respect. Nothing was paid to the members of the organization. Their charitable and humanitarian labors and acts were entirely uncompensated in any pecuniary way. The corporation acquired property and facilities

appropriate for the undertaking. Connected with one of the buildings was a laundry, fully equipped for general laundry work. It was the laundry property, including the lots on which it was located, that the board of equalization sought to tax. There were about 300 inmates in the home, most of whom were girls of limited ability, subnormal intellect, and in need of moral training and acquisition of habits of industry that they might earn for themselves a living. There was only limited work they could do and because of this the laundry was provided so that they could learn to sew and do laundry work. Laundry work was done for hotels, restaurants, and others in competition with the other laundries in the city. The income realized was used to support the home and its inmates. The home conducted a school for the younger inmates and conducted religious services each day.

It was contended that the laundry property was not used exclusively for educational, religious, or charitable purposes, that the property was used as a commercial enterprise for profit and gain, and that the fact that the income therefrom was used for educational or charitable purposes did not render the property from which the income was derived exempt from taxation. This court sustained the exemption of the laundry property from taxation by the following language: "That appellee is an educational, religious and charitable organization is established beyond question. Its main purpose is to care for and rehabilitate fallen women and to educate and train a class of girls who, but for such care, would become moral delinquents and a charge upon society at large. It is necessary that such girls should be educated, should become accustomed to habits of industry and trained in some occupation that will make them useful citizens, and also receive moral training. To provide for this class of girls, appellee has established an institution and erected a laundry in which the girls are employed, and where they are taught an occupation

and trained to become useful citizens and accustomed to habits of industry. Under such circumstances, we think the laundry may be fairly said to be used exclusively for educational and charitable purposes. It is necessary to give these girls training in industry. The fact that an income is derived from the laundry work does not militate against the fact that the property is used for the purposes indicated. So long as the income derived does not inure to the benefit of the owners or the users, it does not transgress the statute providing for exemption from taxation."

The interpretation and application made by this court in the decisions quoted of the provisons of the Constitution and the statute of the state alluded to above exempting property from taxation are decisive of this case. The doctrine that property owned and used by institutions exclusively for educational, religious, and charitable purposes as interpreted by this court in its decisions is exempt from taxation has become inherently part of the law affecting such institutions, their property, and operations and if any change therein is to be made it should be accomplished by means other than action by this court. The doctrine of stare decisis is based on public policy and is entitled to great weight. It should be adhered to unless the reasons therefor do not exist or are clearly erroneous or mischievous or unless more harm than good will result from doing so. Muller v. Nebraska Methodist Hospital, 160 Neb. 279, 70 N. W. 2d 86.

The judgment of the district court should be affirmed.

AFFIRMED.