NEBRASKA CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS, APPELLEE, V. BOARD OF EQUALIZATION OF HALL COUNTY, NEBRASKA, ET AL., APPELLANTS.

138 N. W. 2d 455

Filed November 19, 1965. No. 35996.

Clarence A. H. Meyer, Attorney General, William E. Peters, and Richard L. DeBacker, for appellants.

Luebs, Tracy & Huebner and Asa A. Christensen, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

This is an appeal by the board of equalization and county assessor of Hall County from a judgment of the district court for Hall County exempting from taxation certain property owned by the Nebraska Conference Association of Seventh Day Adventists.

The Conference Association maintains a denominational grade and high school 1 mile east of Shelton, Nebraska, in Hall County. The facility is known as the Platte Valley Academy. It is principally a boarding coeducational parochial high school, although it operates a grammar school primarily for the benefit of the children of the teachers and employees connected with the operation of the school. The high school is accredited by the state and its teachers are certificated as required by the laws of Nebraska. At the time of trial there were 110 students in the high school and 13 in the grammar school. All students are lodged and boarded at the school and require constant supervision throughout the school year. For the school year of 1964-1965, the costs charged for each student were: Tuition, $415; room and laundry, $250; board, $340; a total of $1,005.

The Conference Association is incorporated and holds title to the real and personal property operated as a school. At the time of trial the property used by the Platte Valley Academy consisted of approximately 463 acres of land on which are located school buildings, dormitories, farm buildings, residences occupied by the faculty and maintenance service personnel, a dairy herd of 100 milch cows, and machinery for farming the land.

For convenience, the land was described on exhibit 2 as six tracts numbered I to VI. The residences were numbered 1 to 11. The question of exemption from taxation involves the 93-acre tract of land in Tract VI, and the 11 residences.

The 93 acres of land designated as Tract VI were purchased in 1963, after the decision of this court in Nebraska Conf. Assn. Seventh Day Adventists v. County of Hall, 166 Neb. 588, 90 N. W. 2d 50, in which we held that Tracts I to V, inclusive, were exempt from taxation as being used for educational purposes. The evidence shows that, at the time of the former case, the Conference Association was renting 60 acres of land which were being used in connection with the farming operations of the Platte Valley Academy. Subsequently the lease was lost and the Conference Association purchased the 93-acre Tract VI to replace the leased 60 acres. It is the contention of the Conference Association that Tract VI was needed to carry on its agricultural program in the Platte Valley Academy. The board of equalization contends that this tract is not needed to carry on the agricultural program of the school, and is used only to afford additional income and work opportunity for students, and that it is therefore taxable. This constitutes the issue before the court.

The evidence shows that most of the students attending the school are not financially able to pay the required tuition and expenses in cash. It is the policy of the school to afford farm work to the male students attending the school and to credit such work at an hourly rate on their tuition and expenses. The principal of the school testified that if all tuition and expenses were paid in cash, the school would be self-sustaining, but that this is impossible. The evidence shows that work is afforded male students on the farm lands and dairy and for female students in the food service department and in certain room and custodial service. No academic credit is given for this work. During the current year there

were some 14 boys taking the agriculture course. Farm mechanics is not taught and industrial arts is alternated with the course in agriculture. While the record shows that some of the boys perform some labor on the 93 acres for which they are given credit on their tuition and expenses, there is no evidence that the land was needed to carry out the school's educational program. In fact, the evidence is to the contrary. The school principal testified that as far as academic use is concerned, the acquisition of the 93 acres was not essential to the operation of the academy. The evidence clearly indicates that the purchase of Tract VI was for the purpose of increasing the income for the Platte Valley Academy and was not for the primary purpose of providing educational facilities for the school.

This court has held that it is the exclusive use of property which determines its exempt character. It is the use of property as distinguished from the use of the income from the property that determines whether or not it is exempt from taxation. Doane College v. County of Saline, 173 Neb. 8, 112 N. W. 2d 248; Lincoln Woman's Club v. City of Lincoln, 178 Neb. 357, 133 N. W. 2d 455; Nebraska Conf. Assn. Seventh Day Adventists v. County of Hall, *supra*.

The use of land to increase the income to a school, or for the sole purpose of providing compensable work for students, is an incidental use of property that does not bring it within the terms of the Constitution and statutes providing for exemption from taxation as property owned and used exclusively for educational, religious, charitable, or cemetery purposes, even though such property is not used for private financial gain or profit.

As early as Academy of the Sacred Heart v. Irey, 51 Neb. 755, 71 N. W. 752, this court said: "The test applied by this court in First Christian Church of Beatrice v. City of Beatrice, 39 Neb., 432, was whether the property is used directly, immediately, and exclu-

sively for one of the purposes enumerated in the statute creating the exemptions, in which case it was ruled that lots owned by a religious society, but not used for religious purposes, and entirely separate and distinct from that on which its church edifice is situated, are not exempt from taxation, notwithstanding it was the intention of the society in the future to build a church edifice on said property not so occupied. The doctrine of that case is not only sound, but it is supported by the decisions of the courts of last resort of many of the sister states. It is the exclusive use of the property which determines its exempt character. If it is devoted exclusively to educational purposes, it is not liable to taxation, unless such use is not direct, but remote. If property is used only partially for the purposes of education, exemption from the burdens of taxation cannot be claimed."

This court has also held that if property is partly exempt and partly nonexempt, the value of the nonexempt portion is subject to taxation. Masonic Temple Craft v. Board of Equalization, 129 Neb. 293, 261 N. W. 569, on rehearing, 129 Neb. 827, 263 N. W. 150. The mere fact, therefore, that the 93 acres in Tract VI are being used as a part of the farm operations of the school in which a part of said lands are exempt, does not prevent the taxation of the lands found not to be used for an exempt purpose.

We conclude that Tract VI is not used exclusively for educational purposes, and that its use to round out the farming operations and to provide work for students is too remote to bring it within the purview of the constitutional provision and statute authorizing tax exemption when used exclusively for educational purposes.

The issue resolves itself into a question of fact. The burden of proof is on the party claiming the exemption to show that Tract VI was predominantly used for educational purposes. There is undisputed evidence in the record that it was not needed for academic purposes.

Watson v. Cowles, 61 Neb. 216, 85 N. W. 35. There is evidence that the instructor in agriculture has one class which meets for approximately one hour a day, Monday through Friday. He states that the laboratory work is usually done on Sunday during a two-hour period. He takes his class to any part of the farm that fits in appropriately when the weather is good. There is no evidence other than this general statement as to the academic use made of Tract VI. We do not think the foregoing is sufficient to sustain a finding that the predominate use of Tract VI is for an educational purpose. It could be argued that, although Tract VI was not needed for educational purposes, its use was the same as the other farm lands that were found to be exempt in the previous case. There is no issue here as to Tracts I to V which were held to be exempt in Nebraska Conference Assn. Seventh Day Adventists v. County of Hall, *supra*. We think that use for educational purposes implies that a reasonable need exists for such use. If this is not so, there would be no limit on the amount of land that might be acquired and claimed as exempt for educational purposes when it is actually put to little or no educational use. We think the exemption implies that to be exempt it must be shown that the lands were reasonably needed and predominately used for educational purposes. The evidence in this case will not sustain a finding that Tract VI was predominantly used for educational purposes. The claim of exemption therefore fails for want of sufficient proof. Under such circumstances the tract is not exempt from taxation.

There are 11 residences located on the real estate used in connection with the Platte Valley Academy. Tax exemption was allowed by the district court on all of these residences. The board of equalization and the county assessor assign this as error.

The Platte Valley Academy is operated outside of the corporate limits of any city or town. The students are required to live in the dormitories provided. The school

is coeducational and constant supervision is required. Members of the faculty and other permanent employees are required to live on campus and to assist in maintaining the constant supervision required. The principal designates the residences in which the personnel are to reside. Residing off campus is not permitted except in case of a housing shortage. The academy charges 10 percent of the salary of each occupant as rent, which is credited to the operational fund for maintenance of the homes.

Faculty members and other permanent employees are required to entertain students in their homes, usually on Saturday nights. The cost of such entertainment is jointly shared with the academy. This service is not ordinarily required of each more than four times in a year. Faculty members are required to supervise the cafeteria and play periods on a rotation basis.

There are three residences adjacent to the academy grounds on Tract IV designated as residences Nos. 6, 8, and 10 on Exhibit 2, that are occupied by the principal of the academy, the English instructor, and the minister attached to the school, respectively. No issue is raised as to residence No. 10, the residence of the minister. Residence No. 6 is occupied by the principal and, while he does no teaching, he is responsible for the overall operation of the facility. The evidence shows that he uses the residence in carrying on his administrative work for a period of 7 or 8 hours a week. The residence is used for counseling with students, and he is on call at all times in connection with the affairs of the school. Residence No. 8 is occupied by the English instructor. She uses this residence as her office and spends 10 to 12 hours a week in the home in classroom preparation. She counsels and entertains students in her home as needed or required. We are of the opinion that the requirement that these faculty members live in assigned residences, and the use to which the residences are put in the furtherance of the educational program,

makes their dominant use educational and their occupancy as a dwelling incidental. Nebraska Conf. Assn. Seventh Day Adventists v. County of Hall, *supra;* Doane College v. County of Saline, *supra.* The trial court correctly held residences Nos. 6, 8, and 10 exempt from taxation.

There are three residences separated from the immediate academy grounds designated as residences Nos. 2, 3, and 11. They are occupied by the science and mathematics instructor, the vocal teacher and choir director, and the history and Spanish instructor, respectively.

Residence No. 2 on Tract III is occupied by the science and mathematics instructor and is one of a group of three houses about 6/10 of a mile from the academy. He entertains and counsels periodically as do other faculty members. He has his desk in the dining room of his home but does his class preparation in the classroom. Academic activity in this home is not great due to the distance from the academy building. It is located on Tract III which has been determined to be exempt from taxation. Like the other faculty members, he is required to live in this home and to share in the supervision of the students.

The vocal instructor and choir director occupies residence No. 3 on Tract III. It is located close to residence No. 2. He does no classroom preparation in the home because of the distance from the academy building. He supervises and entertains as do the other resident faculty members.

We are of the opinion that the foregoing two residences are likewise exempt in that their occupants are engaged in an integral part of the educational program of the school. They are required to live in the residences assigned and share in the supervision and entertainment of the students. The land occupied by them is exempt from taxation for educational purposes and we think the

houses are exempt for the same purposes, as is the land on which they are located.

Residence No. 11 is located on Tract VI and became the property of the academy at the same time as the 93 acres in that tract. This residence is a mile from the main academy building. It is occupied by the Spanish and history instructor. It is described by the principal as not functional because of its distance from the school facility. All of the classroom preparation that is done by this instructor is done in the classroom. Counseling is not done in this residence, although some required entertaining is done. It is located on Tract VI, which we have determined to be nonexempt for taxation purposes. It is not an integral part of the academic program. It seems to us that this residence is no more exempt from taxation than a home provided off campus in a town or city. It is located on non-tax-exempt real estate and its predominate use is that of a dwelling and not for educational purposes. We necessarily conclude that it is taxable the same as the 93 acres on which it is located.

Residences Nos. 1, 4, and 5 are located on Tract III, a tract that is tax exempt. They are occupied by the supervisor of the dairy, the assistant farm manager, and the supervisor of farm operations, respectively.

The supervisor of the dairy operations teaches no classes but does infrequent counseling and supervising. He resides in residence No. 1, which is located close to residences Nos. 2 and 3. He keeps the records of the dairy in the dairy office and supervises the care of the livestock and the milking of the 100 dairy cows. Residence No. 4 is occupied by the assistant farm manager who is the instructor in the course in agriculture. He is primarily responsible for upkeep of machinery and supervision of the students operating farm machinery. He is responsible for farm maintenance and water supply. He entertains students periodically as other employees do and takes his turn supervising play periods,

but does not supervise in the cafeteria. He has an office in his home where he keeps his records. Residence No. 5 is also on Tract III near residence No. 4. It is occupied by the supervisor of farming operations. He maintains the farm records in his home. He entertains students as do other employees. He does some counseling with students, although he is not a member of the faculty.

We shall consider the claimed exemption of the foregoing 3 residences in connection with residences Nos. 7 and 9, which are located on Tract IV near the main school building and are occupied by the food supervisor and the head of the maintenance department, respectively. Residence No. 7 is located across the road from the academy cafeteria. The food supervisor operates the cafeteria which serves 3 meals a day, 7 days a week. The residence is used for irregular staff meetings and for entertainment of students once or twice a semester when required. She is required to live in this residence in order that she will be constantly available in her work. She teaches no classes.

Residence No. 9 is occupied by the head of the maintenance department, who is required to reside in this residence. He has charge of the maintenance, repair, and remodeling of all buildings, including the heating system. He is subject to call 24 hours a day in the performance of these duties.

It is the contention of the board of equalization and the county assessor that residences Nos. 1, 4, 5, 7, and 9 do not have a predominate use for educational or religious purposes. It is asserted that these residences are only remotely connected with the educational or religious use of the facility. Residences Nos. 1 to 10 are all located on land that is exempted for educational purposes. They were held to be exempt in Nebraska Conf. Assn. Seventh Day Adventists v. County of Hall, *supra,* and there is no evidence that their use is any different now than it was then. It is an important consideration that the academy is located in a rural area, a mile or

so from the village of Shelton. The fact that the occupants of these residences are not members of the faculty is not a controlling distinction. It seems reasonably necessary to have these employees, who perform the duties recited herein, to be housed in proximity to the school buildings and the places where their duties are performed. The responsibility for farm operations, the care of the livestock, the operation of the dairy, the maintenance and safety of buildings and their occupants, and the operation of the cafeteria and dormitories is of primary importance in carrying out the academic program for the students of this school. The requirement that they reside on the premises appears to be reasonable in view of the location of the school and the constant need for continuing operations, care, and upkeep. We think the use of these residences is predominantly for educational purposes and their use as dwellings is only incidental to the purposes for which they are used. We conclude that the use of these residences is reasonably necessary to the maintenance of the academic program and an integral part of the overall purpose of the facility. They are therefore exempt from taxation.

For the reasons stated, the 93 acres of land in Tract VI and residence No. 11 located thereon are subject to taxation. Residences Nos. 1 to 10, inclusive, are exempt from taxation for the reasons stated. The judgment of the district court is affirmed in part, and in part reversed and the cause remanded with directions to enter a judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.