**HOLLAND HALL SCHOOL, Appellee,**

v.

**Wilson V. GLASS, County Assessor of Tulsa County, Oklahoma, Appellant.**

**No. 44318.**

Supreme Court of Oklahoma.

May 23, 1972.

John S. Athens, Henry G. Will, Conner, Winters, Randolph & Ballaine, John L. Arrington, Jr., Lynnwood R. Moore, Jr., Huffman, Arrington, Scheurich & Kincaid, Tulsa, for appellee.

S. M. Fallis, Jr., Dist. Atty., by Forrest D. Nelson, Asst. Dist. Atty., Tulsa, for appellant.

JACKSON, Justice.

This appeal is a companion case to Immanuel Baptist Church v. Glass, County Assessor, 497 P.2d 757, decided this date. The issue and arguments made by the par-

ties herein are similar to the issue and arguments in that case.

We will refer to the parties in the instant case as School and County Assessor, respectively. The facts are that School owns and operates a private school for children in grades 1 through 12 in Tulsa. The grounds of School contain buildings for classrooms, laboratories, conference rooms, dining hall, administrative offices and a gymnasium. The grounds are also used for a play ground, tennis courts, athletic field, private roads, walkways, automobile parking spaces and open areas. No question is raised concerning the tax exempt status of the foregoing buildings and grounds. The property in controversy is a five bedroom single story house located on a lot which is contiguous to and forms a part of the grounds and facilities of School. After School purchased the house and lot it was used as the headmaster's house and was removed from the Tulsa County tax rolls by County Assessor for the years 1965 through 1968. In 1969 the headmaster's house and lot, hereinafter called headmaster's house, was removed from exempt status and again placed on the tax rolls. School filed a protest to the 1969 assessment with the County Board of Equalization, which denied the protest. School appealed to the District Court which sustained the appeal. County Assessor has appealed to this court.

County Assessor states and we agree that this is a case of first impression in interpreting our State Constitution provision on tax exemption of a school's property which is used as a headmaster's house. The pertinent part of Article 10, § 6 of our Constitution is as follows:

"* * * property used exclusively for schools, colleges, * * * shall be exempt from taxation * * *."

County Assessor cites only two cases from another jurisdiction in an attempt to assist us in determining whether the headmaster's house is exempt under our Constitution. Both arose under the Texas Constitution's provision which exempts property "used exclusively for school purposes." The cited cases are Red v. Johnson, 53 Tex. 284, and Edmonds v. City of San Antonio, 14 Tex.Civ.App. 155, 36 S.W. 495, which hold generally that a building used by the owner for a family residence and also for school purposes is not exempt under the Texas Constitution. The distinction between those cases and the instant case is apparent from the following language in the latter case (p. 496):

"* * * It was never contemplated that a man engaged in any calling other than teaching could by having his wife teach school in the residence, exempt it from taxation. If appellant had been a teacher in the school, and had no other profession, the property might have been exempt from taxation."

Another Texas Supreme Court case clearly sets forth that court's interpretation of its constitutional provision. It is the case of Red v. Morris, 72 Tex. 554, 10 S.W. 681. The facts and decision of the court are stated in the opinion as follows (pp. 681–682):

"* * * the plaintiffs have maintained the institution as a boarding and day school for girls and young ladies, serving, respectively, in the capacities of principal, matron, and teacher in the school. They live in the building during term-time, their residence there being necessary to the proper conduct of the business. During the vacation the principal and matron live upon the premises, their presence being then essential to protect the property, to make needful repairs, and to conduct the correspondence with the patrons of the school.

\* \* \* \* \* \*

" * * * Here the persons who own the property use it themselves, and devote it exclusively to school purposes. Property is owned for such purposes when the owners use it solely for the purpose of keeping a school upon it, and receive no direct profit from it. We conclude that the plaintiffs showed that their property belonged to the class de-

fined in the exempting clause under consideration, and therefore the judgment should have been in their favor."

See also Cassiano v. Ursuline Academy, 64 Tex. 673, in which the court held exempt from taxation those buildings in which students and teachers of the school were "fed and boarded and had their home" for the reason that all the buildings "were necessary and used for the proper and economical conduct of the school."

Other states have construed similar language and reached the same conclusion. In Doane College v. County of Saline, 173 Neb. 8, 112 N.W.2d 248, the Nebraska Supreme Court held that a college president's residence, which was provided to him and in which he and his family were required to live, which was used for receptions, overnight housing of visitors, student meetings and orientation sessions, was property "used exclusively for educational purposes". The same result was reached in Nebraska Conference Association of Seventh Day Adventists v. Board of Equalization, 179 Neb. 326, 138 N.W.2d 455, involving the residence of the principal of a rural parochial boarding school.

The Kansas Supreme Court held in Kansas Wesleyan University v. Board of County Com'rs, 120 Kan. 496, 243 P. 1055, that a university president's residence was exempt as being "used exclusively for educational purposes" as required by the Kansas Constitution. That court said:

"A claim of exemption from taxation must be clearly established to be sustained. We think the showing here made abundantly meets that requirement. Obviously the occupancy of property as a residence by the president of a school and his family does not in and of itself constitute its use for educational purposes. But neither is it inconsistent with its exclusive use in that way. Where such occupancy is for the benefit of the school rather than of the occupant, is intended to serve the ends for which the school is maintained, is adapted thereto and actually accomplishes that object, it becomes in itself an exclusively educational use. The trial court finds that to be the situation here. The holding of the official meetings and school gatherings in the building characterizes it as a part of the machinery by which the affairs of the institution are administered. That use is clearly educational. As those in control consider the habitual presence there of the head of the school necessary to an efficient administration, and as his living there with his family is necessary to bring that about the occupancy of the building as the president's home is in itself an educational use."

The words "used exclusively" in our Constitutional provision mean the use to which property is dedicated and devoted. Immanuel Baptist Church v. Glass, County Assessor, supra. And we have held that the word "schools" in such provision means "school purposes." Chapman v. Draughons School of Business, Okl., 287 P.2d 903.

The facts in the instant case are that the headmaster's house is provided to the headmaster and his family rent-free and they are required to live there. The house contains a library, study and meeting facilities, and in addition to being a residence for the headmaster and his family the house is used for faculty, trustee and student meetings, and for the entertaining and lodging of prospective teachers, visiting educators and other guests of School. At School the headmaster is a teacher and the chief administrative officer. No night watchman is employed by School and the headmaster and his family are expected to oversee the security of the school facilities and grounds after school hours and during non-school days such as holidays, weekends and summer months. The headmaster's continual presence on the premises is described as being necessary to the program of the school which involves a personal relationship between the headmaster and the students, faculty and parents.

We find based on these facts that the headmaster's house is dedicated and devot-

ed to school purposes and is therefore exempt from taxation by the Constitutional provision set out above.

Affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, IRWIN, LAVENDER, McINERNEY and BARNES, JJ., concur.

HODGES, J., dissents.