NEBRASKA CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS, APPELLEE, v. BOARD OF EQUALIZATION OF HALL COUNTY, NEBRASKA, ET AL., APPELLANTS.
211 N. W. 2d 613

Filed October 26, 1973. No. 38941.

Sam Grimminger, for appellants.

Luebs, Tracy, Huebner, Dowding & Beltzer and Asa A. Christensen, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

This is an appeal by the board of equalization and the county assessor of Hall County from a judgment of the District Court exempting from taxation certain property owned by the Nebraska Conference Association of Seventh Day Adventists. The District Court found all the property of Platte Valley Academy, a coeducational boarding high school to be tax exempt, with the exception of the property occupied and used for profit by two privately owned and operated industries, and a residence rented to the owner of one of the industries. These were found taxable along with certain other property previously determined by this court to be taxable. We affirm the judgment of the District Court.

The general facts involving the ownership and operation of the Platte Valley Academy are set out in Nebraska Conference Association of Seventh Day Adventists v. Board of Equalization, 179 Neb. 326, 138 N. W. 2d 455. It was stipulated that but for the location and operation of the two private industries and the residence on a portion of the school real estate, all the real estate and personal property owned by the conference in Hall County as described in this proceeding qualifies for exemption from taxation under the Nebraska Revised Statutes. The sole issue presented on this appeal is whether the location and operation of the two factories upon the academy campus destroy the tax exempt status of all the remaining property of the school which would otherwise be tax exempt.

The Platte Valley Academy is a fully accredited coeducational boarding high school. It has approximately

150 students. All students are required to work 6 to 30 hours per week in addition to classroom assignments as an essential part of their training. Their work performance is evaluated periodically, along with classroom work. Most students need such work in order to pay their tuition, room, and board. Those students having greater financial need generally work more hours per week. The academy itself provides work for many of the students in maintenance and operation of the academy and grounds, including laundry, cafeteria, maintenance, custodial, secretarial, and other jobs.

In addition to the work provided by the school, two privately owned factories, a broom factory and a plastics factory, have been located on the campus expressly for the purpose of providing work experience for the students. Both private businesses are obliged to employ only students, except for supervisory employees or sales personnel who are required to travel. The broom factory employs 12 to 15 students and the plastics factory employs 5 or 6 students. Students are all part-time employees, except in the summer when some work full-time and stay in the school dormitory with other school personnel. All student work, both that performed for the academy and that performed for the private industries, is assigned by the principal in consultation with faculty and staff on the basis of age, financial need, schedule, class load, and capabilities. All students receive at least the legal minimum wage. They are not paid in cash except in rare instances. Instead, they receive credit against their academy account for room, board, and tuition. Both private industries compute student earnings, and make the necessary withholdings. These payroll lists are forwarded to the academy, together with checks for the earnings, which are credited to each student's academy account.

The respective owners exclusively supervise the operation of both the broom factory and the plastics factory and all profits go to them. Both private industries

received loans from the conference to assist in establishing the businesses at the academy. The loans are secured by mortgages. Under the agreements with the respective owners of the factories, the conference provided space for the operation of the businesses which was to be rent free for an initial period with the rental to be negotiated thereafter. The industries agreed to maintain the buildings and to assume responsibility for such items as insurance, utilities, and taxes, and to return the space to the conference upon any termination of the agreement in as good condition as received, less ordinary wear and tear.

The broom factory occupies a building approximately 28 x 100 feet in size. The plastics factory occupies space constituting approximately one-third of the total space in another building. In addition to the buildings occupied by the factories, the owner of one of them rents a residence from the academy for which he pays rental of $100 per month. The building space occupied by the two factories and this residence were found taxable by the District Court and there is no appeal from that portion of the judgment.

The appellants contend that the uses of the private businesses from which the owners receive financial gain and profit are so intermingled with the uses of the Platte Valley Academy as to render the property incapable of separation into exempt and taxable portions. Therefore, they argue that the entire tax exemption of the academy should be denied. There is no evidence of any kind that the basic operation of the academy as an educational institution has been altered or changed in any way by the addition of the two private factories except to provide additional student work.

In Young Men's Christian Assn. v. Lancaster County, 106 Neb. 105, 182 N. W. 593 (1921), this court considered the issue of whether it was feasible to segregate the space occupied by a cafeteria, open to the public, from the rest of a Y.M.C.A. building for purposes of taxation.

We quoted with approval a statement that: "The fact that the building is so constructed, that the parts leased or otherwise used with a view to profit cannot be separated from the residue by definite lines, is no obstacle to a valuation of such parts for purposes of taxation, having due reference to the taxable value of the entire property." This court stated: "No reason appears why the taxing authorities cannot arrive at a just valuation of that portion of the building which is taxable, in its relation to the entire property, and assess the property in that amount."

Later in Masonic Temple Craft v. Board of Equalization, 129 Neb. 293, 261 N. W. 569, this court held: "That part of a building owned by a religious, charitable and educational institution, but leased and used by the tenant for business purposes, is not exempt from taxation." On rehearing, the same holding was applied to the lot upon which the building stood. Masonic Temple Craft v. Board of Equalization, 129 Neb. 827, 263 N. W. 388.

Nebraska Conference Association of Seventh Day Adventists v. Board of Equalization, 179 Neb. 326, 138 N. W. 2d 455, involved the same academy and most of the same property involved here. There this court found part of the academy property taxable and the remainder exempt and said: "* * * if property is partly exempt and partly nonexempt, the value of the nonexempt portion is subject to taxation." Quite obviously the corollary is that the value of the exempt portion of the property is not subject to taxation.

This court has consistently held that property owned and used exclusively for educational, religious, or charitable purposes and not owned or used for financial gain or profit to either the owner or user is tax exempt. Property not so owned and used is taxable and we have separated the taxable property from the tax exempt property in many cases similar to that now before us. See Union College v. Board of Equalization, 183 Neb. 579, 162 N. W. 2d 772.

The judgment of the District Court was correct in all respects and is affirmed.

AFFIRMED.