508 A.2d 514

**SUPERVISOR OF ASSESSMENTS OF BALTIMORE CITY**

**v.**

**FRIENDS SCHOOL.**

No. 1086, Sept. Term, 1985.

Court of Special Appeals of Maryland.

May 13, 1986.

510

Jane E. Pilliod, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Kaye Brooks Bushel, Asst. Atty. Gen., on brief), Baltimore, for appellant.

Thomas D. Washburne, John F. Morkan, III and Ober, Kaler, Grimes & Shriver, Baltimore, for amicus curiae, Association of Independent Maryland Schools.

T. Scott Basik (Charles C. Shelton and Semmes, Bowen & Semmes, on brief), Baltimore, for appellee.

Argued before WILNER, ROSALYN B. BELL and KAR-WACKI, JJ.

ROSALYN B. BELL, Judge.

The Supervisor of Assessments appeals an order of the Circuit Court of Baltimore City reversing the Maryland Tax Court's decision that a caretaker's residence located on the property of Friends School was not exempt from real property taxes under Md.Code Ann. Art. 81, § 9(e)(2) (1957, 1980 Repl.Vol.). Article 81, § 9(e)(2), *supra*, as presently codified exempts "[p]roperty owned by ... any ... educational ... institutions or organizations ... when ... actually used exclusively for and necessary for ... educational purposes (including athletic programs and activities of an educational institution) in the promotion of the general public welfare of the people of the State."

The Supervisor presents two issues on appeal contending that the tax court's decision was supported by substantial evidence and, consequently, must be affirmed; and even if regarded as a legal determination, the tax court's decision must be affirmed because it is correct as a matter of law.

Friends School is a private day school located in Baltimore City. The Supervisor of Assessments assessed the caretaker's residence at $47,750 for the 1983–84 tax year. The residence was built by the school in the 1940's specifically to house a caretaker on campus. The caretaker was required to live in the residence as a condition of his employment. Until the assessment in question, the house had always been exempt from property taxes.

Friends School appealed the assessment to the Maryland Tax Court. Applying the decision in *Supervisor of Assess-*

*ments of Baltimore County v. Trustees of Bosley Methodist Church Graveyard,* 293 Md. 208, 443 A.2d 91 (1982), the tax court determined that since the caretaker's residence had no "academic function," Friends School was not entitled to a tax exemption for the property. The court did not find whether the property was "actually used exclusively for and necessary for ... educational purposes ... in the promotion of the general public welfare of the people of the State" as required under Art. 81, § 9(e)(2), *supra.* The circuit court, applying *Maryland State Fair and Agricultural Society, Inc. v. Supervisor of Assessments of Baltimore County,* 225 Md. 574, 172 A.2d 132 (1961), reversed the tax court's decision. The circuit court reviewed the evidence presented to the tax court and found that the caretaker's residence "[was] both essential and necessary for the operation of Friends School."

The Supervisor appeals to this Court. The Association of Independent Maryland Schools filed an *amicus curiae* brief in support of Friends School.

When reviewing a tax court decision, Md.Code Ann. Art. 81, § 229(*o* ) (1957, 1980 Repl.Vol., 1985 Cum.Supp.) requires that a reviewing court "shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." Consequently, under § 229(*o* ), *supra,* "the judicial review of decisions of the Maryland Tax Court is severely limited." *Comptroller of the Treasury, Income Tax Division v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77 (1977).

We hold that both the tax court and circuit court erred as a matter of law in applying inapplicable precedent and thus we may substitute our judgment under Art. 81, § 229(*o* ), *supra.* We will explain.

## I. TAX COURT'S DECISION

The tax court relied on *Trustees of Bosley Methodist Church Graveyard, supra,* to support its decision that the caretaker's residence was taxable. In that case, Bosley

Methodist Church and St. John's United Church of Christ were denied tax exemptions for caretakers' residences owned by the churches under Md.Code Ann. Art. 81, § 9(c) (1957, 1980 Repl.Vol.). Subsection (c), *supra,* exempts property owned by a religious group or organization actually used for public religious worship or educational purposes. The Court of Appeals in *Bosley, supra,* only interpreted the "actually used" and "public religious worship" language. The interpretation of the "educational purposes" clause was not addressed.

■ Although we adopt the Court's definition of the phrase "actually used," the tax court's reliance on *Bosley, supra,* was erroneous. That case involved an exemption for property used for "public religious worship." In the case *sub judice,* the applicable exemption is codified under subsection (e)(2), *supra,* the exemption for property used and necessary for "educational purposes." The exemption for property used for "public religious worship" interpreted in *Bosley, supra,* is clearly distinguishable from the exemption for property used and necessary for "educational purposes" implicated in the case before us. Moreover, the omission of the "necessary for" language from subsection (c), *supra,* indicates that subsection (c) and subsection (e) are not analogous.

■ In addition, in the case *sub judice* the tax court determined that the caretaker's residence had no "academic function," whereas Art. 81, § 9(e)(2), *supra,* requires a determination of whether the property is actually used and necessary for "educational purposes." Since there can be a distinction between "academic function" and "educational purposes," the tax court erred as a matter of law in applying the wrong standard. Accordingly, the circuit court was permitted to substitute its judgment for that of the tax court.

## II. CIRCUIT COURT DECISION

The circuit court relied in part on the test enunciated in *Maryland State Fair, supra,* to overturn the tax court

decision. In *Maryland State Fair, supra,* the Court of Appeals interpreted the language of the statute then in force which permitted, *inter alia,* a tax exemption for property owned and used by an educational institution which was "necessary for the respective uses" of that institution. Md.Code Ann. Art. 81, § 9(8) (1957).

The Court of Appeals explained that in *Maryland State Fair, supra,* it was construing the "necessary for the respective uses" clause of the statute. *Maryland State Fair, supra* 255 Md. at 579, n. 1, 172 A.2d 132. As we discuss *infra,* the substance of this language was changed in 1972 with the enactment of the current exemption for educational institutions codified at Art. 81, § 9(e)(2), *supra.* The interpretation by the Court in *Maryland State Fair, supra,* therefore, is no longer applicable. Consequently, the circuit court erred as a matter of law in relying on this decision to reverse the tax court's determination. Accordingly, in reviewing this matter this Court may substitute its own judgment.

### III. SOURCES OF STATUTORY INTERPRETATION

■ The statute under consideration, § 9(e)(2), *supra,* exempts, *inter alia,* that property owned by and actually used exclusively for [1] and necessary for the educational purposes of a school.

The question of what constitutes an "educational purpose" under § 9(e)(2), *supra,* has not been addressed by either the Legislature or the appellate courts of this State. For guidance in interpreting this phrase, we examine several sources including the legislative history of § 9(e)(2), *supra,* previous decisions applying this statute, and out-of-state applications of similar statutory provisions.

---

1. The "exclusive" use requirement has been diluted to permit multiple uses of the property as long as the primary use of the subject property is necessary for the main purposes of the institution. *See Lodge # 817, Trustees Benevolent and Protective Order of Elks v. Supervisor of Assessments of Wicomico County,* 292 Md. 533, 541, 439 A.2d 591 (1981).

■ In establishing a standard, we note that unlike the construction rules applicable to tax statutes in general, "statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State." *Perdue, Inc. v. State Department of Assessments and Taxation*, 264 Md. 228, 232–33, 286 A.2d 165 (1972). (Emphasis in original) In fact, the Code itself mandates that property tax exemptions must be strictly construed. Md.Code Ann. Art. 81, § 9(a), *supra.* They must, however, be construed fairly so as to give expression to the legislative intent and purpose. *State Tax Commission v. Baltimore Block & Tile Co.*, 180 Md. 620, 26 A.2d 371 (1942). Accordingly, we examine the legislative history behind Art. 81, § 9(e)(2), *supra.*

### Legislative History

■ In 1972, several exemptions previously scattered throughout the Code were combined into Art. 81, § 9(e), *supra.* This included the exemption at issue for educational institutions and organizations. Within the exemption for educational institutions, the word "actually" was inserted before the word "used" and the "necessary for the respective uses thereof" language was changed to read "necessary for ... educational purposes." Appellant argues that these changes served to narrow the exemption and that the previously exempted caretaker's residence was, thus, taxable.

The *1970 Report of the Maryland Legislative Council on Taxation and Fiscal Matters* provides the sole legislative history. In the general discussion, the Report notes the rapid growth in the number of exemptions and the resultant erosion of the property tax base. *Id.* at 93. This discussion indicates an intent on the part of the Legislature to narrow the existing exemptions. Therefore, all property which was exempt under the previous statute would not necessarily be exempt under the revised statute. Moreover, in interpreting the phrase "actually used," the *Bosley* Court

stated: "It is generally agreed that the insertion of the term 'actually used' in a statute which grants an exemption from taxation based on the use of the property significantly limits the range of exempt property." (Citations omitted) *Bosley, supra* 293 Md. at 215, 443 A.2d 91.

Although we conclude that the Legislature intended to narrow the exemption for property owned by educational institutions and organizations, we do note that both the statute and legislative history are devoid of any definition or explanation of the term "educational purposes." Previous decisions applying § 9(e)(2), *supra,* are equally barren.

### Previous Decisions by Maryland Tax Court and Circuit Court Under § 9(e)(2)

Appellee cites two opinions since the 1972 statutory changes which upheld exemptions for residences on school property and argues that they are controlling. We point out that while these decisions are not binding on this Court, we do find them instructive.

In *Supervisor of Assessments of Montgomery County v. Landon School Corporation,* No. 49247 (February 27, 1979), the circuit court affirmed exemptions for five residences housing four faculty members and the headmaster at a private day school. The faculty residences were used for tutoring, student guidance meetings and faculty socials. The headmaster's house was also used for student and faculty meetings. The recreation room in his house was open for use to the senior class at all times. The circuit court, therefore, concluded that the tax court could reasonably have found that the residences were primarily used for the broader educational purposes of the school.

In *Supervisor of Assessments of Baltimore City v. Associated Professors of Loyola College, Inc.,* M.T.C. No. 1593 (November 28, 1980), the tax court permitted an exemption for the residence of the vice president of the college. The tax court reasoned that, in addition to serving as a residence and a meeting location, the house was necessary in

order to have available at all times a high-level administrator with decision making authority to deal with any emergencies that might arise.

In either case, the respective courts did not define "educational purposes", but it is apparent that the rationale behind the determination of whether an exemption is granted under § 9(e)(2), *supra*, depends in part upon the nature of the activities that take place within the subject property. Accordingly, activities such as tutoring, faculty and student meetings, recreational activities and the performance of essential administrative duties occurring frequently within the residences in question rendered those premises exempt. An exemption for a caretaker's residence at a day school does not necessarily follow from the exemptions permitted in these two cases.

### Foreign Jurisdictions

Finally, in interpreting the phrase in question we refer to decisions of other jurisdictions. Appellee and the *amicus curiae* cite several such cases to support their contention that the caretaker's property should have been exempt. *See Arnold College for Hygiene and Physical Education v. Town of Milford*, 144 Conn. 206, 128 A.2d 537 (1957); *Burris v. Tower Hill School Association*, 36 Del. 577, 179 A. 397 (1935); *Nebraska Conference Association of Seventh Day Adventists v. Board of Equalization of Hall County*, 179 Neb. 326, 138 N.W.2d 455 (1965); *Blair Academy v. Township of Blairstown*, 95 N.J.Super. 583, 232 A.2d 178, *cert. denied*, 50 N.J. 293, 234 A.2d 401 (1967); *Pratt Institute v. Boyland*, 16 Misc.2d 58, 174 N.Y.S.2d 112 (1958), *aff'd*, 8 A.D.2d 625, 185 N.Y.S.2d 753 (1959); *Application of Thomas G. Clarkson Memorial College of Technology*, 274 App.Div. 732, 87 N.Y.S.2d 491 (N.Y.App.Div.), *aff'd*, 300 N.Y. 595, 89 N.E.2d 882 (1949); *Dennison University v. Board of Tax Appeals*, 2 Ohio St.2d 17, 205 N.E.2d 896 (1965); *Holland Hall School v. Glass*, 497 P.2d 763 (Okla.1972); *Multnomah School of the Bible v. Multnomah County*, 281 Or. 19, 343 P.2d 893 (1959). Appellant

responds that the wording of the statutes granting property tax exemptions in these cases is substantially different than the wording of the Maryland statute and, therefore, these decisions are of no assistance in the case *sub judice.* Appellant suggests that the statutes at issue in these cases generally exempted all buildings used for a school or college without regard to the use made of the building; the Maryland statute, however, focuses on the actual use of the property and the necessity of the property for the purposes of the institution. We agree.

It is true that most of the decisions cited by appellee and the *amicus* brief are inapposite based on the different language in the statutes. It is also true that these out-of-state decisions are not binding in Maryland. Most noteworthy, these decisions are factually distinguishable. We will examine two such decisions in which the statutes were substantially similar to the Maryland law and in which the subject property was a caretaker's residence in order to elucidate the distinction.

In *Multnomah School of the Bible, supra,* and *Nebraska Conference Association of Seventh Day Adventists, supra,* the Courts permitted property tax exemptions for the residences of the superintendent of buildings and head of maintenance respectively. Both of these schools were boarding schools and, therefore, required the employees in question to be in close proximity at all times to the students and buildings under their supervision. It is clear the security and maintenance needs of a boarding school are greater and different than those of a day school. We have not found, and appellee does not cite, any authority for granting an exemption under a similar statute for a caretaker's residence on a day school campus.

IV. THE APPLICABLE TEST UNDER § 9(e)(2)

■ Under § 9(e)(2), *supra,* there is a three-pronged test to determine whether property owned by an educational institution is exempt. The property must be 1) owned by an educational institution or organization; 2) actually used and

necessary for the educational purposes of that institution or organization; and 3) used in the promotion of the general public welfare of the citizens.

The first and third prongs of this test are self-explanatory. The property must be owned by an educational institution or organization and the subject property itself must be used in the promotion of the public welfare. It is not enough that the institution as a whole serves the general populace. *See Lodge # 817, Trustees Benevolent and Protective Order of Elks v. Supervisor of Assessments of Wicomico County*, 292 Md. 533, 539, 439 A.2d 591 (1981).

The second prong of this test requires that the property be actually used and necessary for the educational purposes of the institution or organization. We recognize that

"[a] college is more than its classrooms, laboratories and study halls. It is an undertaking that involves, in today's world, athletic fields, gymnasiums, libraries, faculty and student lounges, school newspaper offices, administrative offices, chapels and ofttimes, faculty residences."

*Anderson v. Associated Professors of Loyola College in the City of Baltimore, Inc.*, 39 Md.App. 345, 349, 385 A.2d 1203, *cert. denied*, 283 Md. 729 (1978).

■ Thus, "educational purposes," unlike the "academic function" standard used by the tax court, clearly encompasses more than classroom activities. We hold, however, that under Md.Code Ann. Art. 81, § 9(e)(2), *supra*, to qualify for an exemption the activities that occur in or on the subject property must directly relate to the educational goals of the institution.

■ Whether the property is "actually used" for educational purposes depends upon several factors. The use must be "actual and present." *Bosley, supra* 293 Md. at 216, 443 A.2d 91. The type of activities that occur within the premises and their frequency are also significant. For example, one cannot argue successfully that a building used solely as a personal residence—one in which no student,

faculty or administrative activities occur—is "actually used" for educational purposes. Actual use also depends upon the regularity with which these activities occur.

■ Similarly, whether the property is "necessary for" educational purposes depends upon the specific facts in each case. Factors which must be considered include the particular type of institution, *i.e.*, day or boarding school; the needs of the student body, taking into account their age, educational level, social development, and other special requirements; the location of the school, *i.e.*, rural, suburban or city; the proximity of the subject property to the students or campus buildings; and whether the services performed in or on the property can be contracted out or are shared by other school employees. The building or property must *itself* be necessary to the broader educational purposes, including the academic, social, and athletic activities offered by the school. We note and appellee concedes that merely because the institution's directors acquire property for the school and deem the activity occurring therein "educational," does not per se mean that the property is actually used and necessary for the educational purposes of the institution. *Lodge #817, supra* 292 Md. at 539, 439 A.2d 591.

## V. CONCLUSION

■ Normally we would remand to the tax court to apply the three-pronged test we have set forth. The facts in this case are uncontroverted, and therefore, remand is unnecessary. We conclude, as did the tax court, albeit on other bases, that the premises in question was not exempt.

Appellee is a day school located in Baltimore City. The caretaker's house is owned by appellee and is situated on the campus proper. Testimony revealed that during the 1983–84 tax year, the caretaker primarily performed security and maintenance duties. On cross-examination, the school's business manager admitted the caretaker's residence served no "educational function." Additionally, while

the business manager stated that it was necessary to have a caretaker living on campus for security and maintenance purposes, he conceded that the school also employed a night watchman and that no one lived in the caretaker's residence when the caretaker was absent on vacation. When questioned whether the house had any special features which assisted the caretaker in his duties, the business manager responded that there was a portable spot light in the residence and the house was equipped with a school telephone for communication. In addition, he related that the residence offered a clear view "of most of the buildings on campus."

There is no question that the first prong of the test under § 9(e)(2), *supra,* was met. The residence is owned by appellee.

Turning to the second prong, there is no doubt that the caretaker himself served a vital function for the institution. That, however, is not the issue. The facts indicate that no activity either directly or indirectly related to the educational goals of the school took place in or on the residence. In admitting that there was no "educational function" to the building, appellee, in effect, conceded that the property was not actually used and necessary for the educational purposes of the institution. Additionally, it is significant that appellee is a day school, that the school employed a night watchman for security purposes, and that no one replaced the caretaker when he was away from the residence. Therefore, the second prong was not fulfilled.

The third prong was unsatisfied as well. While the school undoubtedly serves to promote the general public welfare, the caretaker's residence during the 1983–84 tax year itself served only as a personal residence.

We do not mean to suggest that the school may not have a resident caretaker or that every caretaker's residence is taxable. We hold only that the caretaker's residence on the property of this school was not exempt under § 9(e)(2), *supra.* The property was not itself actually used and

necessary for the educational purposes in the promotion of the general welfare.

JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEE.