NEBRASKA STATE BAR FOUNDATION, APPELLANT, V. LANCASTER
COUNTY BOARD OF EQUALIZATION ET AL., APPELLEES.

465 N.W.2d 111

Filed January 18, 1991.   No. 87-967.

2

James A. Snowden, of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

Michael E. Thew, Deputy Lancaster County Attorney, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

## BACKGROUND FOR APPEAL

For the purpose of property taxation, the Nebraska State Bar Foundation (Bar Foundation) is the owner of real property designated as the "Roman Hruska Law Center" (Law Center) in Lancaster County, Nebraska. In its tax exemption application for 1984, the Bar Foundation asserted that 56.3 percent of the Law Center, that is, the part of the Law Center claimed to be used for educational and charitable purposes, was

exempt from property taxation. After the board of equalization for Lancaster County (county board) disapproved the application, the Bar Foundation appealed to the district court for Lancaster County and contended that part of the Law Center was tax-exempt, since the center was partially used for charitable and educational purposes and the foundation held the Law Center in trust for the Nebraska State Bar Association, which was "created by the Supreme Court of Nebraska by state action to serve the public purpose."

The district court found that the Bar Foundation was "not a charitable organization; that is to say, '. . . an organization operated exclusively for the purpose of the mental, social or physical benefit of the public or an indefinite number of persons.' " The court also found that the Bar Foundation was not an "educational organization" and that the Law Center was not "property of the state and its governmental subdivisions." Consequently, the court determined that the Bar Foundation was not entitled to a tax exemption for the Law Center and affirmed the county board's decision, which had denied the foundation's tax exemption application.

In its appeal, the Bar Foundation contends that part of the Law Center, as property used for "charitable" and "educational" purposes, is exempt from taxation pursuant to Neb. Rev. Stat. § 77-202(1)(c) (Cum. Supp. 1984) and that the Law Center, as governmental property, is tax-exempt in accordance with § 77-202(1)(a), all pertaining to the years 1984 to 1987, inclusive.

## STANDARD OF REVIEW;
## TAXPAYER'S BURDEN OF PROOF

In an appeal from a district court's judgment on the question whether property is tax-exempt, an appellate court determines a tax exemption question de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, when credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Bethphage Com. Servs. v. County Board*, 221 Neb. 886, 381

N.W.2d 166 (1986). See, also, *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 230 Neb. 135, 430 N.W.2d 502 (1988); *Immanuel, Inc. v. Board of Equal.*, 222 Neb. 405, 384 N.W.2d 266 (1986); *Matzke v. Board of Equalization*, 167 Neb. 875, 95 N.W.2d 61 (1959); Neb. Rev. Stat. § 77-1511 (Reissue 1990).

"[T]ax exemption provisions are strictly construed, and their operation will not be extended by construction. . . . Property which is claimed to be exempt must clearly come within the provision granting exemption from taxation." *Bethphage Com. Servs. v. County Board, supra* at 889, 381 N.W.2d at 169. Accord *Indian Hills Comm. Ch. v. County Bd. of Equal.*, 226 Neb. 510, 412 N.W.2d 459 (1987). "Since a statute conferring an exemption from taxation is strictly construed, one claiming an exemption from taxation of the claimant or the claimant's property must establish entitlement to the exemption." *Nucor Steel v. Leuenberger*, 233 Neb. 863, 867, 448 N.W.2d 909, 912 (1989); *Bethphage Com. Servs. v. County Board, supra.*

## NEBRASKA'S STATUTE FOR TAX-EXEMPT PROPERTY

Originally, the constitutional provision for property tax exemption appeared in 1875 as article IX, § 2, of the Nebraska Constitution:

> The property of the state, counties and municipal corporations, both real and personal, shall be exempt from taxation, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation, but such exemptions shall be only by general law.

Hence, the initial statute for the charitable and educational exemptions from property taxation was Comp. Stat. § 4934 (1903), which provided in part: "The following property shall be exempt from taxes: First—All property of the state, counties, and municipal corporations. Second—Such other property as may be used exclusively for agricultural and horticultural societies, for schools, religious, cemetery and charitable purposes."

As the result of a constitutional amendment in 1920, the

genesis for property tax exemption is Neb. Const. art. VIII, § 2, which, pertinent to the present appeal, provides:

> The property of the state and its governmental subdivisions shall be exempt from taxation. The Legislature by general law may exempt . . . property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user.

Consequently, in 1921, the Legislature amended the property tax exemption statute to provide in part:

> The following property shall be exempt from taxes:
>
> (1) The property of the state and its governmental subdivisions.
>
> (2) Property owned by and used exclusively for agricultural and horticultural societies, and property owned and used exclusively for educational, religious, charitable or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user.

Comp. Stat. § 5821 (1922).

Insofar as questions in this appeal are concerned, Nebraska's Revised Statutes of 1943 retained the provisions of the 1921 statute:

> The following property shall be exempt from taxes:
>
> (1) The property of the state and its governmental subdivisions;
>
> . . . .
>
> (3) Property owned and used exclusively for educational, religious, charitable or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user . . . .

§ 77-202 (1943).

In 1980, § 77-202 was amended to provide:

> (1) The following property shall be exempt from taxes:
>
> (a) The property of the state and its governmental subdivisions;
>
> . . . .
>
> (c) Property owned *by educational, religious,*

*charitable, or cemetery organizations* and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user . . . .

(Amendatory new language emphasized.) § 77-202(1)(a) and (c) (Reissue 1981).

The Legislature, in 1984, again amended § 77-202:

(1) The following property shall be exempt from taxes:

(a) The property of the state and its governmental subdivisions;

. . . .

(c) Property owned by educational, religious, charitable, or cemetery organizations and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not (i) owned or used for financial gain or profit to either the owner or user, (ii) *used for the sale of alcoholic liquors for more than twenty hours per week, or* (iii) *owned or used by an organization which discriminates in membership or employment based on race, color, or national origin. For purposes of this subdivision, educational organization shall mean an institution operated exclusively for the purpose of offering regular courses with systematic instruction in academic, vocational, or technical subjects or a museum or historical society operated exclusively for the benefit and education of the public, and charitable organization shall mean an organization operated exclusively for the purpose of the mental, social, or physical benefit of the public or an indefinite number of persons* . . . .

(Amendatory new language emphasized.) § 77-202(1)(a) and (c) (Cum. Supp. 1984).

After the 1984 amendment, subparts (a) and (c) of § 77-202(1) have remained unchanged. See § 77-202 (Reissue 1990).

## NEBRASKA STATE BAR FOUNDATION

*Nature of Organization.*

The Nebraska State Bar Foundation was incorporated in 1963 as a Nebraska nonprofit corporation to obtain gifts and

contributions for the purposes expressed in the foundation's articles of incorporation, namely:

    (a) To advance the science of jurisprudence;

    (b) To promote and improve the administration of justice;

    (c) To uphold high standards for the judiciary and for lawyers;

    (d) To facilitate understanding of and compliance with the law, and to promote the study of law, research therein, and the diffusion of knowledge thereof;

    (e) To cause to be published and to distribute addresses, reports, treatises and other literary works on legal subjects, and to acquire, preserve and exhibit rare books and documents, objects of art, and items of historical interest having legal significance or bearing on the administration of justice; and

    (f) To do and perform all acts and things which are legitimate and are reasonably calculated to promote the interests and carry out the purposes of this organization.

Also, the Bar Foundation's articles of incorporation provide:

No part of the income or assets of this organization shall inure to the benefit of any member, officer or director, or private individual; and none of the activities, funds, property, or income of the Foundation may be used in carrying on any propaganda or political activity, directly or indirectly, or in attempting to influence legislation, either directly or indirectly, and neither the Foundation nor its officers or directors may, as such officers or directors of the Foundation, contribute to or otherwise support or assist any political party or candidate for elected public office.

To become a member of the Bar Foundation, one must be among the "active membership" of the Nebraska State Bar Association and must have contributed to the foundation. A 20-member board of directors elected from the foundation's membership conducts the foundation's activities and serves without compensation, although the foundation is authorized to pay reasonable compensation for services rendered by

persons other than the foundation's board of directors. Under I.R.C. § 501(c)(3) (1982), the Bar Foundation, as a "publicly supported organization," is exempt from federal income taxation. Also, contributions to the foundation are deductible as donations to a charitable organization.

*Activities of Bar Foundation.*

Among the Bar Foundation's early activities, and "one of the original goals" of the foundation, was fund raising for construction of a headquarters building for the Nebraska State Bar Association. Eventually, the Bar Foundation constructed the Law Center, in which law-related organizations occupy 56.3 percent of the center's usable floorspace, namely: the Bar Foundation occupies 13 percent; the Nebraska State Bar Association, 35.8 percent; and Nebraska Continuing Legal Education, 7.5 percent. The Nebraska State Bar Association and Nebraska Continuing Legal Education pay rent to the Bar Foundation for their floorspace in the Law Center. The remaining 43.7 percent of the Law Center's floorspace is leased to tenants unassociated with law-related activities.

Among its specific activities, the Bar Foundation has supplied "seed money" for Nebraska Continuing Legal Education, that is, initial funding for commencement of that educational corporation, and has made annual grants to Nebraska Continuing Legal Education since its inception. The Bar Foundation funded a "Student Legal Services Handbook" for the Association of Students of the University of Nebraska, a publication "[t]o provide students with general information on areas of law that most frequently concern them. [The handbook] is written to inform rather than advise, the hope being that students who have an awareness of their legal rights will seek the advice of an attorney regarding a specific legal problem." Also, foundation funding was used for the "Nebraska Annotations to the Restatement (Second) of Trusts" and the "Annotation and Restatement of Torts." Additionally, the Bar Foundation supplied or committed funds for a study of the Nebraska court system, the publication of a "Consumer's Guide to Nebraska Law," a conference of state Supreme Court justices and court administrators, and a writing contest in

Nebraska relative to the Bicentennial of the U.S. Constitution.

## NEBRASKA STATE BAR ASSOCIATION

The Nebraska State Bar Association (NSBA) was incorporated as a Nebraska nonprofit corporation in 1976 and operates under supervision of the Supreme Court of the State of Nebraska. NSBA's purposes are

> to improve the administration of justice; to foster and maintain high standards of conduct, integrity, confidence and public service on the part of those engaged in the practice of law; to safeguard and promote the proper professional interests of the members of the Bar; to provide improvements in the education and qualifications for admission to the Bar, and for the study of the Science of Jurisprudence and Law Reform, and the continuing legal education of the members of the Bar; to improve the relations of the Bar with the public; to carry on a continuing program of legal research; and to encourage cordial relations among the members of the Bar; all to the end that the public responsibilities of the legal profession may be more effectively discharged.

Every lawyer licensed to practice in the State of Nebraska must be a member of NSBA, which also includes judges.

Located in the space rented by NSBA are offices for various bar-related activities or functions, for example, the Counsel for Discipline, who, in accordance with rules promulgated by the Supreme Court of the State of Nebraska, is involved in enforcement of the Code of Professional Responsibility for lawyers and the disciplinary process of lawyers; the Nebraska State Bar Commission, which offers recommendations to the Supreme Court of the State of Nebraska regarding applications to practice law in Nebraska and which is responsible for preparing and grading part of the bar examinations for admission to practice law in Nebraska; Legal Services, which affords some "pro bono" legal services to indigent clients and maintains a lawyer-referral program; Nebraska Lawyers Trust Account Foundation, or "IOLTA" (Interest on Lawyers Trust Accounts), which provides funds for legal services to indigents; and Law-Related Education, which informs the public about

"concepts of law."

## NEBRASKA CONTINUING LEGAL EDUCATION

Nebraska Continuing Legal Education (NCLE) is a Nebraska nonprofit corporation which provides

> an educational program for the study, discussion and dissemination of information relating to the laws of the State of Nebraska, United States of America, the several States thereof, and governmental units and organizations inferior to or related to any of them, and international law, for members of the Nebraska State Bar Association and interested persons not members of such Association.

NCLE's board of directors reviews the "particular needs of the legal profession" regarding education and "the kinds of programs [that] would most benefit the legal profession." Thereafter, NCLE conducts seminars or lectures in areas "of importance to the legal profession." Although nonlawyers sometimes attend NCLE seminars of particular interest, for instance, a seminar on school law, seminar attendance by nonlawyers is "the exception rather than the rule."

## FEDERAL TAX EXEMPTION

The Bar Foundation points to its federal tax exemption as a charitable organization under § 501(c)(3) of the Internal Revenue Code and suggests that the federal exemption is "highly relevant" to the question concerning property exemption under § 77-202(1)(c) (Cum. Supp. 1984). Brief for appellant at 20. A property owner's exemption from federal income taxation does not determine whether the owner's property is tax-exempt under state law. *New Canaan Academy v. Town of Canaan*, 122 N.H. 134, 441 A.2d 1174 (1982); *Ladies Club v Grand Rapids*, 409 Mich. 748, 298 N.W.2d 422 (1980); *Eyring Research Institute v. Tax Com'n of Utah*, 598 P.2d 1348 (Utah 1979); *Council Rock School Dist. v. G.D.L. Plaza*, 91 Pa. Commw. 176, 496 A.2d 1298 (1985); *NRA Spec. Contribution Fund v. Bd. of Cty. Com'rs*, 92 N.M. 541, 591 P.2d 672 (1979); *AWWA v. Board of Assessment Appeals*, 38 Colo. App. 341, 563 P.2d 359 (1976). Reasons for the preceding proposition are not only the different types of taxes levied, but also imposition of taxes by two distinct and autonomous

governmental authorities. Therefore, tax-exempt status of the Bar Foundation's property is determined by Nebraska law irrespective of federal law governing exemption from income taxation.

## PROPERTY OF A CHARITABLE ORGANIZATION

As disclosed by the examination of Nebraska's earliest statute for tax-exempt property and subsequent exemptive statutes, legislation for tax-exempt property demonstrates a discernible and deliberate pattern of statutory evolution. Initially, only the property's exclusive use was the controlling factor in determining whether property was exempt. Comp. Stat. § 4934 (1903). In 1921, while a property's exclusive use for a charitable or educational purpose remained a factor in tax exemption, for the first time ownership of property became a determinant for tax exemption, although ownership was nondescript, since a particular nature, character, or status of the property owner was unspecified in either the 1921 amendment or the immediately subsequent § 77-202(3) (1943). Thus, property use was the focal point for exemption from property taxation. For that reason, this court, construing availability of the "charitable" and "educational" exemptions under § 77-202(3) (1943), commented that "in determining whether or not property is within a tax exemption provision, the use of the property and not the status or character of the owner of the property controls." *Nebraska Conf. Assn. Seventh Day Adventists v. County of Hall,* 166 Neb. 588, 598, 90 N.W.2d 50, 55 (1958). In consideration of § 77-202(1)(c) (Reissue 1971), this court stated: "It is the primary or dominant use, and not an incidental use, of the property which is controlling in determining whether property is exempt from taxation . . . ." *Bethesda Foundation v. County of Saunders,* 200 Neb. 574, 577, 264 N.W.2d 664, 666 (1978). Accord, *Lincoln Woman's Club v. City of Lincoln,* 178 Neb. 357, 133 N.W.2d 455 (1965); *Doane College v. County of Saline,* 173 Neb. 8, 112 N.W.2d 248 (1961). Drawing from those preceding "use" decisions, the Bar Foundation maintains that under § 77-202(1)(c) (Cum. Supp. 1984), "the controlling factor is the primary or dominant use, not any incidental use." Brief for appellant at 13. Regarding the

Bar Foundation's decisional support for its "controlling factor" test, the precedential value of a decision containing judicial construction of a statute may, and probably does, diminish when the construed statute is subsequently amended in reference to the statutory language which was the subject of the prior interpretative decision. Cf. *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989) (interpretative precode decisions may have little value in construing the Nebraska Criminal Code).

Continuing on our statutory trek through the charitable and educational exemptions from property taxation, in 1980, § 77-202 was amended, so that the specific nature, character, or status of the property owner became a factor in determining whether property was tax-exempt, that is, the property must be "owned by [an] educational, religious, [or] charitable" organization. § 77-202(1)(c) (Reissue 1981). Thus, through the 1980 amendment, a property owner's nature, character, or status became a determinative factor considered with the additional requirements that the property be used for statutorily specified purposes and not owned or used for financial gain or profit to the property's owner or user.

Notwithstanding the 1980 amendment of § 77-202(1)(c), there remained a question for courts: What is a "charitable organization" in reference to tax-exempt property?

In *Scottish Rite Building Co. v. Lancaster County*, 106 Neb. 95, 98, 182 N.W. 574, 575 (1921), this court characterized "charity" as that "actually done for the relief of the unfortunate and the alleviation of suffering, or in some work of practical philanthropy, as contrasted with the sentimental or ethical viewpoint." In *Young Men's Christian Ass'n v. Lancaster County*, 106 Neb. 105, 111, 182 N.W. 593, 595 (1921), "charity" was characterized as "something more than mere alms-giving or the relief of poverty and distress, and [as having] a significance broad enough to include practical enterprises for the good of humanity operated at a moderate cost to those who receive the benefits." Accord *Lincoln Woman's Club v. City of Lincoln, supra.*

Still other definitions of "charity" are found in this court's decisions such as *United Community Services v. The Omaha*

*Nat. Bank*, 162 Neb. 786, 791, 77 N.W.2d 576, 582 (1956), wherein "charity" meant

> "a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

(Quoting from 10 Am. Jur. *Charities* § 3 (1937).)

Eventually, in *United Way v. Douglas Co. Bd. of Equal.*, 215 Neb. 1, 337 N.W.2d 103 (1983), this court indicated that the charitable exemption under § 77-202(1)(c) was based on a benefit to the public generally and elimination of services which the state would otherwise have to perform in response to its governmental duties. Cf. *St. Louis Union Trust Company v. United States*, 374 F.2d 427, 432 (8th Cir. 1967) (a reason for the charitable exemption is that "the favored entity performs a public service and benefits the public or relieves it of a burden which otherwise belongs to it").

One commentator has observed:

> Exemption of charitable property flows from the concept that property used for public activities and functions should not be taxed. Hence it follows that because charitable property renders a public service and is used for public functions it should be tax exempt. Formulated in terms of the so-called governmental theory of tax exemption, private charities perform functions that the state would be required to undertake and tax exemption is granted as a quid pro quo for the performance of these functions and services. Many courts expand the governmental doctrine into the humanitarian theory under which tax exemption is justified not only for the performance of functions which relieve the state of its burden but also for activities which further socially desirable objectives considered of benefit to the community. These differing theories of tax exemption of charitable property have, to a considerable extent, been responsible for the lack of uniformity which has

traditionally characterized the case law in this area.
E. Fisch, D. Freed & E. Schachter, Charities and Charitable Foundations § 787 at 602-03 (1974). As the court noted in *Child v. United States*, 540 F.2d 579, 583 (2d Cir. 1976):

> Relief of general tax burdens alone, in a society with some progressivity in its tax structure, cannot be deemed a single, inalienable mark of charity.
>
> Our view is that relief for the public fisc is more symptomatic than evidentiary regarding whether an activity is charitable: charity often results in an absorption of a burden otherwise falling upon the state, particularly where the social welfare is a principal purpose of the state. But this does not mean that activities lessening public expense in any of a myriad of areas of public interest are perforce charitable.

In an attempt to eliminate confusion or uncertainty in a definition or characterization of "charitable organization," the Legislature in 1984 amended § 77-202(1)(c) by providing: "[C]haritable organization shall mean an organization operated exclusively for the purpose of the mental, social, or physical benefit of the public or an indefinite number of persons . . . ." Therefore, for tax-exempt status pursuant to § 77-202(1)(c) (Cum. Supp. 1984), property must: (1) be owned by a type of organization designated in § 77-202(1)(c); (2) be used exclusively for at least one of the purposes specified in § 77-202(1)(c), i.e., an educational, religious, charitable, or cemetery purpose; and (3) not be (a) owned or used for financial gain to the property owner or user, (b) used more than 20 hours per week for sale of alcoholic liquors, or (c) owned or used by an organization which, on the basis of race, color, or national origin, discriminates in membership or employment. See, *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 230 Neb. 135, 430 N.W.2d 502 (1988); *Immanuel, Inc. v. Board of Equal.*, 222 Neb. 405, 384 N.W.2d 266 (1986). We again note that § 77-202(1)(c) (Cum. Supp. 1984) is the same as the current tax exemption statute, § 77-202(1)(c) (Reissue 1990).

Thus, § 77-202(1)(c) contains a two-tier approach to tax exemption for property. At the first tier is the particular nature, character, or status of a property owner as an organization

which is one of the types designated in § 77-202(1)(c). At the second tier is use of the property, that is, the specific kinds and degrees of use which qualify or disqualify property concerning the charitable or educational tax exemptions available under § 77-202(1)(c). At the first tier, if an owner is not an organization of a type entitled to property tax exemption pursuant to § 77-202(1)(c), continuation to the second tier, namely, consideration of the property's use, is unnecessary, since the property owner has failed to qualify as an organization entitled to tax exemption for its property. In this manner, through a series of amendments to statutes authorizing tax exemption of property owned by certain types of organizations, the Legislature, by narrowing the definitions for "charitable organization" and "educational organization," has systematically and intentionally broadened the property tax base through limited availability of property tax exemption under § 77-202(1)(c).

Consequently, the next question is whether the Bar Foundation, as owner of the Law Center, is a charitable organization within § 77-202(1)(c), that is, an organization operated exclusively for the purpose of the mental, social, or physical benefit of the public or an indefinite number of persons.

"Operated exclusively," in reference to a charitable organization within § 77-202(1)(c), means an organization's primary or predominant activity. See, *Bethphage Com. Serv. v. County Board*, 221 Neb. 886, 381 N.W.2d 166 (1986); *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965); *Ancient and Accepted Scottish Rite v. Board of County Commissioners*, 122 Neb. 586, 241 N.W. 93 (1932).

Regarding "mental" benefit of the public, as one of the requisite purposes of a charitable organization within § 77-202(1)(c), "mental" means "intellectual," see Webster's Third New International Dictionary, Unabridged 1411 (1981), which in turn means, among other things, "engaged in creative literary, artistic, or scientific labor." *Id.* at 1174.

Applying the preceding definition of "mental" to the Bar Foundation's primary or predominant activity, the Bar Foundation is not operated for generation of literary, artistic,

or scientific benefit to the general public.

However, might the Bar Foundation's primary or predominant activity relate to the mental benefit of "an indefinite number of persons"? Relative to a charitable organization within § 77-202(1)(c), "an indefinite number of persons" means a group of persons with a common characteristic, that is, a class, uncertain in number and composed from the public at large or a community. See, *Lynch v. Spilman*, 67 Cal. 2d 251, 431 P.2d 636, 62 Cal. Rptr. 12 (1967); *Am. Soc. for Test. & M. v. Bd. of Rev. of Taxes*, 423 Pa. 530, 225 A.2d 557 (1967); *Continental Illinois Bank v. Harris*, 359 Ill. 86, 194 N.E. 250 (1934); *Ancient and Accepted Scottish Rite v. Board of County Commissioners, supra.*

Generally, the public cannot, except in extremely limited situations, act as lawyers in Nebraska without a license to practice law. Therefore, if we assume that the Bar Foundation operates primarily or predominantly to provide a "mental benefit" to a class, the benefited class is not composed from the public at large or from a community. Rather, the class which benefits from the Bar Foundation's primary or predominant activity is the membership of the NSBA, a restricted group of persons with a common characteristic—a license to practice law in the State of Nebraska. The Bar Foundation's other operations are basically law-related activities such as providing grants for continuing education of lawyers and funding for legal publications, for example, "Nebraska Annotations to the Restatement (Second) of Trusts," activities which benefit a restricted class, namely, lawyers, and not a class composed from the public at large.

Since there is no evidence that the Bar Foundation's operations confer any social or physical benefit on the general public or an "indefinite number of persons," as that phrase is used in § 77-202(1)(c), we reach the same conclusion as that reached by the district court: The Bar Foundation is not a charitable organization within § 77-202(1)(c) (Cum. Supp. 1984).

## EDUCATIONAL ORGANIZATION

Section 77-202(1)(c) also contains a definition or

characterization of an "educational organization," that is, "an institution operated exclusively for the purpose of offering regular courses with systematic instruction in academic, vocational, or technical subjects . . . ." There is no evidence whatsoever that the Bar Foundation is an institution with the primary or predominant activity of offering regular courses with systematic instruction in academic, vocational, or technical subjects. Hence, we conclude, as did the district court, that the Bar Foundation is not an educational organization within § 77-202(1)(c).

## TAX EXEMPTION CLAIM UNDER § 77-202(1)(c)

Therefore, since the Bar Foundation is neither a charitable organization nor an educational organization within the statutory definitions contained in § 77-202(1)(c), the Bar Foundation is not entitled to tax exemption of the Law Center pursuant to § 77-202(1)(c).

## GOVERNMENTAL PROPERTY EXEMPTION
## UNDER § 77-202(1)(a)

The property of the State of Nebraska and its governmental subdivisions is exempt from property taxation. § 77-202(1)(a).

As the basis for another exemption of the Law Center, the Bar Foundation alleges:

> Section 77-202 further provides that the property of the state and its governmental subdivisions shall be exempt from taxes. The Nebraska State Bar Foundation holds title to the subject property in trust for the Nebraska State Bar Association which is an integrated state bar created by the Supreme Court of Nebraska by state action to serve the public purpose. The Nebraska State Bar Association and its trustee, the Nebraska Bar Foundation constitute a governmental instrumentality which is exempt from taxation.

In its application, filed with the county assessor and later heard before the county board, the Bar Foundation sought tax exemption for part of the Law Center under the charitable and educational exemptions of § 77-202(1)(c), that is, exemption of the Law Center's floorspace occupied by the Bar Foundation, NSBA, and NCLE, or exemption of 56.3 percent of the Law

Center.

At the hearing before the county board, much of the discussion and information related to whether the Law Center was used "exclusively for charitable and educational purposes" and whether NSBA was a "charitable organization." After receipt of information bearing on the Bar Foundation's application for tax exemption of the Law Center, the county board voted in October 1984 to "disallow the exemption application for the Nebraska State Bar Foundation for educational and charitable purposes," a decision which the Bar Foundation appealed immediately.

The Bar Foundation, in its amended petition filed in 1987, renewed its allegations about the "charitable" and "educational" aspects of the Bar Foundation, NSBA, and NCLE, but additionally alleged that the foundation held title to the Law Center in trust for "the Nebraska State Bar Association which is an integrated bar created by the Supreme Court of Nebraska by state action to serve the public purpose." In its appeal to this court, the Bar Foundation contends:

> It is the Nebraska State Bar Association that assists the Supreme Court in carrying out its responsibilities as a branch of government in Nebraska. There is no other State agency which assists the Supreme Court in carrying out these responsibilities. . . .
>
> The inescapable conclusion is that governmental functions are undertaken from within the Law Center building. The Supreme Court created the Bar Association to assist it in carrying out its judicial functions. This assistance requires office space and that necessary office space is in the Law Center.

Brief for appellant at 31.

The county board has never objected to the district court's considering whether the Law Center is governmental tax-exempt property, but maintains that the Law Center is not property owned by either the State of Nebraska or a political subdivision of the state.

While each party in this appeal directs our attention to decisions which tend to support its respective position on tax exemption of governmental property, both the Bar Foundation

and the county board overlook an important and dispositive procedural point in this case.

An appeal from a decision by a county board of equalization is authorized by Neb. Rev. Stat. § 77-1510 (Reissue 1990) and is controlled by § 77-1511, which in part provides that "[t]he district court shall hear appeals and cross appeals taken under section 77-1510 as in equity and without a jury, and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof." The foregoing statutes are verbatim successors to their prior statutory counterparts pertaining to appeals from a decision by a county board of equalization.

In *Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 403 N.W.2d 366 (1987), Gordman Properties Company, as appellant in the district court, attempted to raise an issue concerning uniformity and proportionality of valuation regarding Gordman's property, an issue which was never raised before the county board of equalization, since the board considered only Gordman's tax protest to an increase in the actual value of Gordman's property. In *Gordman*, we not only recognized that the district court lacked jurisdiction to resolve any question involving uniformity and proportionality of valuation for Gordman's property, but also made some observations and statements worth repeating in the present appeal:

Referring to a statutory predecessor substantially the same as the current § 77-1511, this court observed in *Reimers v. Merrick County*, 82 Neb. 639, 640, 118 N.W. 113, 114 (1908): "The legislature, in the section of the revenue law referred to, has seen fit to restrict the district court on such appeal to a consideration of the questions raised before said board, and the court is without power to adjudicate any other issue in that proceeding." See, also, *State Bank v. Seward County*, 95 Neb. 665, 146 N.W. 1046 (1914); *Brown v. Douglas County*, 98 Neb. 299, 152 N.W. 545 (1915).

This court has advanced two explanations or reasons for the restriction on issues or questions which can be tried

in the district court in a taxpayer's appeal from action of a county board of equalization.

In *Reichenbach Land & Loan Co. v. Butler County*, 105 Neb. 209, 211, 179 N.W. 1015, 1016 (1920), this court noted: "The local board had ample power in the first instance to correct any error in the official action of the assessor, and the question for review should have been pointed out in some form. In considering the interests of the taxpayers of an entire county and of the public at large, in examining numerous items and in determining the value of property in different forms for the purpose of taxation, the county board of equalization is entitled to a specific complaint, and should have an opportunity to pass on the question for ultimate decision before the public revenues become involved in protracted or vexatious litigation. On appeal to the district court the questions for review are limited to the questions presented to the county board of equalization. This is the public policy of the state. . . ."

The district court's restricted scope of inquiry in a taxpayer's appeal from action by a board of equalization was also discussed in *Nebraska Telephone Co. v. Hall County*, 75 Neb. 405, 407, 106 N.W. 471 (1906), where this court stated: "[T]he reason for the limitation is obvious. If a taxpayer could present a question to the board which was without merit, and, after a determination of that question against him, could appeal to the district court and there present another and different question, a meritorious one, which required a different ruling, he could always overturn the assessment, and thus escape taxation of his property altogether."
225 Neb. at 174-75, 403 N.W.2d at 370-71.

Thus, under § 77-1511 an appeal to a district court concerning a decision by a county board of equalization is a trial de novo, but only the tax liability questions raised before the board of equalization are the questions for adjudication by the district court in its appellate jurisdiction. *Gordman Properties Co. v. Board of Equal., supra*; *Brown v. Douglas County*, 98 Neb. 299, 152 N.W. 545 (1915); *State Bank v.*

*Seward County*, 95 Neb. 665, 146 N.W. 1046 (1914); *Reimers v. Merrick County*, 82 Neb. 639, 118 N.W. 113 (1908).

From the record, it is as undeniable as it is eminently clear that the question whether the Law Center is tax-exempt governmental property was never presented to the county board of equalization and, therefore, was never part of the decision from which the Bar Foundation appealed to the district court.

> Whether a question is raised by the parties concerning jurisdiction of the lower court or tribunal, it is not only within the power but the duty of an appellate court to determine whether such appellate court has jurisdiction over the subject matter. . . . Where lack of subject matter jurisdiction in the original tribunal is apparent on the face of the record, yet the parties fail to raise that issue, it is the duty of the reviewing court to raise and determine the issue of jurisdiction sua sponte.

*Glup v. City of Omaha*, 222 Neb. 355, 359, 383 N.W.2d 773, 777 (1986).

When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, the Supreme Court also lacks power to adjudicate the merits of the claim. *Andrews v. City of Lincoln*, 224 Neb. 748, 401 N.W.2d 467 (1987).

"Litigants cannot confer subject matter jurisdiction on a judicial tribunal by either acquiescence or consent." *Coffelt v. City of Omaha*, 223 Neb. 108, 110, 388 N.W.2d 467, 469 (1986). Accord, *In re Interest of Adams*, 230 Neb. 109, 430 N.W.2d 295 (1988); *Andrews v. City of Lincoln, supra*; *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986).

Although the district court had subject matter jurisdiction regarding the Bar Foundation's appeal from the county board's decision, the jurisdiction of the district court, as an appellate court, was restricted to questions raised before and decided by the county board. *Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 403 N.W.2d 366 (1987). While the district court had subject matter jurisdiction to adjudicate questions regarding charitable and educational exemptions under § 77-202(1)(c), since those questions were raised before the county board, the district court lacked subject matter

jurisdiction to adjudicate any question concerning the exemption of governmental property pursuant to § 77-202(1)(a), because the question whether the Law Center is governmental property was never raised before the county board. In view of the fact that the district court lacked power to adjudicate the question whether the Law Center is tax-exempt governmental property, we vacate the district court's judgment that the Law Center was not governmental property exempt from taxation pursuant to § 77-202(1)(a).

As a result of the district court's lack of power to determine whether the Law Center was tax-exempt governmental property, this court also lacks jurisdiction to decide whether the Law Center is exempt from taxation in accordance with § 77-202(1)(a).

## TAX EXEMPTION FOR 1985 TO 1987

Although Neb. Rev. Stat. § 77-202.03 (Cum. Supp. 1984) does provide a 4-year period of exemption from property taxation, "[s]ection 77-202.03 . . . in substance [provides] that, if property is exempted from taxation in any given year, such exemption may continue for each of the 3 successive years after grant of such exemption if the property owner annually and timely files the specified affidavit." *Indian Hills Comm. Ch. v. County Bd. of Equal.*, 226 Neb. 510, 517-18, 412 N.W.2d 459, 464 (1987). Since the Law Center is not exempt from property taxation for the year 1984, we do not reach the question whether the center is tax-exempt for the years 1985 to 1987, inclusive.

## CONCLUSION

We affirm the district court's judgment that the Bar Foundation's Law Center is not tax-exempt property under § 77-202(1)(c), but we vacate the district court's judgment concerning tax exemption for the Law Center under § 77-202(1)(a).

AFFIRMED IN PART, AND IN PART VACATED.

BOSLAUGH, J., dissenting.

This case appears to turn on the question of whether the Nebraska State Bar Foundation, the owner of the Nebraska Law Center building, is an educational and charitable

organization which owns and uses a part of the property for educational and charitable purposes. Under the Constitution and statutes, exemption of property because of educational and charitable use requires that the property be both owned and used for such purposes.

The Bar Foundation is a nonprofit corporation which was organized by the Nebraska State Bar Association (Bar Association) in 1963. One of the purposes of the Bar Foundation was to construct a Law Center and make it available to the Bar Association. The Law Center was designed to house the Bar Association and organizations relating to it.

The Bar Foundation has tax-exempt status under the Internal Revenue Code, which requires that the Bar Foundation be organized and operated exclusively for charitable and educational purposes. The revised articles of incorporation of the Bar Foundation provide:

## ARTICLE III

Section 1. The exclusive purpose of this organization shall be to promote the following educational, literary, scientific and charitable purposes or any of them, both directly and by gifts or contributions to any other organization whose purposes and operations are exclusively educational, literary, scientific or charitable which is qualified as an exempt organization under Section 501(c)(3) of the Internal Revenue Code of 1954 (or corresponding provision of any future United States Internal Revenue law), to be used exclusively for any of the following purposes:

(a) To advance the science of jurisprudence;

(b) To promote and improve the administration of justice;

(c) To uphold high standards for the judiciary and for lawyers;

(d) To facilitate understanding of and compliance with the law, and to promote the study of law, research therein, and the diffusion of knowledge thereof;

(e) To cause to be published and to distribute addresses, reports, treatises and other literary works on legal subjects, and to acquire, preserve and exhibit rare books

and documents, objects of art, and items of historical interest having legal significance or bearing on the administration of justice; and

(f) To do and perform all acts and things which are legitimate and are reasonably calculated to promote the interests and carry out the purposes of this organization.

No part of the income or assets of this organization shall inure to the benefit of any member, officer or director, or private individual; and none of the activities, funds, property, or income of the Foundation may be used in carrying on any propaganda or political activity, directly or indirectly, or in attempting to influence legislation, either directly or indirectly . . . .

. . . .

## ARTICLE X

In the event of dissolution of this Foundation, any remaining assets shall be distributed to one or more organizations described in Section 501(c)(3) of the Internal Revenue Code (or corresponding provision of any future United States Internal Revenue Code).

The articles establish that the Bar Foundation was organized and intended to be a nonprofit charitable foundation, and it can only be such under its present articles.

Projects or grants of the Bar Foundation have included providing "seed money" for NCLE, publishing Nebraska Annotations to the Restatement (Second) of Trusts, financing the long-range planning conferences of the Bar Association, funding conferences on law-related education, providing grants to libraries of the University of Nebraska and Creighton Law Schools, and partially funding the meetings of law-related conferences such as the Conference of Chief Justices and the Conference of State Court Administrators.

The Bar Foundation holds the Law Center building in trust for the use of the Bar Association, which as an integrated bar association is an arm of this court. The Bar Association itself is unique among organizations in that it was created by the Supreme Court of Nebraska in 1937, pursuant to a petition for integration of the Bar Association, by rule of this court. See *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275

N.W. 265 (1937).

The purposes of its creation were stated by this court as follows:

### RULES CREATING, CONTROLLING AND REGULATING
### NEBRASKA STATE BAR ASSOCIATION.

For the advancement of the administration of justice according to law, and for the advancement of the honor and dignity of the legal profession, and encouragement of cordial intercourse among members thereof, for the improvement of the service rendered to the public by the Bench and Bar, there is hereby organized, created and formed the Nebraska State Bar Association.

*Id.* at 291, 275 N.W. at 269.

After the promulgation and adoption of the Rules Creating, Controlling and Regulating the Nebraska State Bar Association by this court on September 20, 1937, the Bar Association ceased to be a voluntary association and became an integrated bar association.

As an integrated bar association, the Bar Association is under the control of this court and has no existence independent of this court. All lawyers admitted to practice in this state are required to be members of the Bar Association, and the Bar Association functions as an arm of this court in performing many functions necessary to the regulation and control of the practice of law in this state. The Bar Association maintains all of the records concerning the membership of the bar and collects the dues necessary to finance the operation of the Bar Association. None of the funds of the Bar Association from dues or proceeds from the sale of seminar materials are distributed to members, officers, or directors of the Bar Association. The examination and investigation of candidates for admission to the bar are handled by a commission composed of members of the bar appointed by this court for that purpose, which commission is assisted by employees of the Bar Association.

The discipline of members of the bar is under the direction of the Counsel for Discipline, who is employed by the Bar Association, but whose appointment and tenure are subject to

the approval of this court. All of the expense of the office and for employees of the Counsel for Discipline is paid by the Bar Association. The disciplinary process is aided by the Committees on Inquiry and the Disciplinary Review Board, the members of which are appointed for that purpose by this court.

The Bar Association performs many other services which are charitable or educational in nature and of benefit to the public.

The Bar Association aids this court in the administration of justice through the Legal Services Lawyer Referral Program, which solicits participation of lawyers to handle pro bono cases for members of the public. The persons who operate this program have their offices located in the Law Center.

Under the direction of this court, the Bar Association established an Interest on Lawyers' Trust Accounts program, which is operated by the Nebraska Lawyers' Trust Account Foundation. The trust foundation has its offices in the Law Center. The trust foundation is exempt from taxation under § 501(c)(3) of the Internal Revenue Code.

The Bar Association has various activities which are intended to educate the public, such as the "Ask a Lawyer" television program, publications furnished to the public regarding general matters of legal concern, and a law-related education program which devises curricula for the schools which are used to instill in students the values underlying our legal system. The Bar Association employs the director of Law-Related Education, and he and his staff are located in the Law Center.

The application which the Bar Foundation filed on September 1, 1984, sought exempt status for only the 56.3 percent of the property which is occupied and used by the Bar Foundation, the Bar Association, and NCLE. The Law Center was built with expansion space which was to be rented out until the Bar Association or related activities needed it. If property is partly exempt and partly nonexempt, the value of the nonexempt portion is subject to taxation. *Nebraska Conf. Assn. Seventh Day Adventists v. Bd. of Equalization*, 179 Neb. 326, 138 N.W.2d 455 (1965). No claim of exempt status is made as to the part of the property which is leased to others.

In 1983, the Bar Foundation announced its intention to build a Nebraska Law Center building. The site was purchased in

January 1984, and construction started. The building was completed, and the Bar Foundation first occupied the building in May 1985.

The construction of the Nebraska Law Center building was financed by funds which were collected by the Bar Foundation from members of the bar, and other contributors were solicited on the bases that the funds would be used for the educational and charitable purposes of the Bar Foundation and the Bar Association and that the Law Center would be available for the use of the Bar Association on a fair rental basis. The evidence establishes that it would be a breach of trust to the donors to the Bar Foundation if the Law Center was not available for use by the Bar Association.

A gift to a charitable corporation is a gift to the objects and purposes for which the corporation was organized and is governed by the rules of law applicable to charitable trusts. *In re Estate of Harrington*, 151 Neb. 81, 36 N.W.2d 577 (1949). See, also, *Board of Trustees of York College v. Cheney*, 158 Neb. 292, 63 N.W.2d 177 (1954).

As to the use of the Law Center, the record shows that approximately 13 percent of the space in the Law Center is occupied and used by the Bar Foundation itself. The Bar Foundation does not pay for the space it occupies because it owns the building. The Bar Association performs many services for the Bar Foundation, in the way of secretarial service, recordkeeping, etc., for which the Bar Foundation pays $10,000 per year to the Bar Association.

The Bar Association occupies approximately 35 percent of the space in the Law Center, for which it pays an annual rental to the Bar Foundation determined on a fair market basis.

Approximately 8 percent of the space in the Law Center is occupied by NCLE. NCLE is a nonprofit corporation which was organized by the Bar Association in 1973 to provide continuing legal education services to the members of the bar and the public. The articles of incorporation of NCLE provide:

<u>ARTICLE III</u>
<u>PURPOSES</u>

The purposes for which the corporation is organized are:

A. To provide, through the facilities and personnel of

the corporation, and by financial support of other organizations as herein stated, an educational program for the study, discussion and dissemination of information relating to the laws of the State of Nebraska, United States of America, the several States thereof, and governmental units and organizations inferior to or related to any of them, and international law, for members of the Nebraska State Bar Association and interested persons not members of such Association.

B. To provide, similarly, a program for the study, discussion and dissemination of information relating to the practice of law, and the supplying of legal services in the State of Nebraska.

C. To provide research, debate, and evaluation in legal and paralegal subjects.

D. To organize and present information as to all matters referred to in the preceding paragraphs of this Article through lectures, seminars and programs in any form; to present such programs directly to the hearers, or by radio, television, or audio-visual means.

E. To publish educational materials in printed form, or as audible or visible recordings.

F. To provide centralized information, direction, and assistance, for continuing legal education programs in the State of Nebraska.

G. To carry out the educational purposes of the corporation directly or by the contribution of money, property, or services to organizations that qualify as exempt scientific, literary or educational organizations under the provisions of Section 501(c)(3) of the Internal Revenue Code of the United States, or any amendment thereto, and the regulations pertaining to said Section.

Notwithstanding any other provision of the Articles, the corporation shall not conduct or carry on any activities not permitted to be conducted or carried on by an organization exempt under Section 501(c)(3), or by an organization, contributions to which are deductible under Section 170(c)(2), of the Internal Revenue Code and regulations pertaining to such actions, as they now exist or

hereafter may be amended. . . .
. . . .

## ARTICLE X
## PROHIBITION OF PRIVATE BENEFIT:
## LIMITATION OF ACTIVITIES

The corporation shall have no capital stock and shall declare no dividends. No part of the net earnings of the corporation or share in distribution of any of the corporate assets on dissolution of the corporation, shall inure to the benefit of any organization not qualified for tax exemption under Section 501(c)(3) of the Internal Revenue Code and regulations relating thereto, as they now exist or may hereafter be amended, nor to any member, director, officer of the corporation, or private individual (except that reasonable compensation may be paid for services rendered to or for the corporation affecting one or more of the purposes). No substantial part of the activities of the corporation shall be the carrying on of the propaganda or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distributing of statements), any political campgain [sic] on behalf of any candidate for public office.

## ARTICLE XI
## DISSOLUTION

The corporation may be dissolved as provided by law. Upon dissolution or any winding up of the affairs of the corporation the assets of the corporation shall be distributed as the members shall direct, exclusively to scientific, literary, or educational organizations which would then qualify under the provisions of Section 501(c)(3) of the Internal Revenue Code and regulations pertaining thereto as the same then exist.

NCLE is an exempt organization under § 501(c)(3) of the Internal Revenue Code.

Although the programs and seminars conducted by NCLE are intended primarily for the continuing education of lawyers, NCLE programs are open to the public and many of the subjects involve areas of concern to laymen. No attempts are

made to limit or exclude nonlawyers.

NCLE offices and staff are located in the Law Center. NCLE pays rent to the Bar Foundation on a fair market basis. The Bar Foundation makes an annual grant to NCLE of $25,000 as a return of the rent.

The fact that the Bar Foundation leases space in the Law Center to the Bar Association and NCLE does not prevent the property from being used for educational or charitable purposes if the use made by the lessees qualifies as educational or charitable.

In *United Way v. Douglas Co. Bd. of Equal.*, 215 Neb. 1, 337 N.W.2d 103 (1983), we held that the fact United Way of the Midlands leased a part of the space in the A. C. Nelson Center for Community Services to the Omaha Council of Campfire Girls and Greater Omaha Community Action did not prevent the property from being exempt from taxation. In that case, we said at 3-6, 337 N.W.2d at 105-07:

> Statutes exempting property from taxation are to be strictly construed, and the burden of proving the right to exemption is upon the claimant. *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965). This does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the Legislature, but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption. *Y.M.C.A. of Omaha v. Douglas County*, 60 Neb. 642, 83 N.W. 924 (1900).
>
> The policy in providing for tax exemptions for charitable uses is based on the principles that tax exemptions benefit the public generally and the organization performs services which the state is relieved pro tanto from performing. 84 C.J.S. *Taxation* § 215 (1954). See, also, *Y.M.C.A. of Omaha v. Douglas County, supra.*
>
> We first deal with the legitimacy of an exemption for the space leased to charitable organizations.
>
> Appellant attempts to dispose of the issue by contending that since United Way received income from

the property, it is "used for financial gain or profit to either the owner or the user" and therefore fails to meet the constitutional and statutory requirements for exemption from taxation. Brief of Appellant at 10.

It is true that in this case the difference between rentals received and cost of services furnished by United Way was $8,408. However, this does not alone disqualify the space from the exemption. See *House of the Good Shepherd v. Board of Equalization*, 113 Neb. 489, 203 N.W. 632 (1925).

Neb. Rev. Stat. §§ 21-1901 et seq. (Reissue 1977) make up the Nebraska Nonprofit Corporation Act. Section 21-1901(3) defines a not-for-profit corporation as a "corporation no part of the income of which is distributable to its members, directors or officers." As a Nebraska nonprofit corporation, United Way is burdened by that restriction on the distribution of its income, and there is no evidence that it has violated the statute in that respect. In *City of McAllen v. Ev. Luth. Good Sam. Soc.*, 530 S.W.2d 806 (Tex. 1975), the court said that the proscription against an institution's realization of "gain or profit" refers to gain or profit by private individuals or the accrual of distributable profits.

In *Doane College v. County of Saline*, 173 Neb. 8, 112 N.W.2d 248 (1961), the college rented college-owned faculty housing to faculty members at fair market rental rates. The college credited income from rentals after expenses to the endowment fund. This court denied exemption from property tax, having determined that the faculty housing was not exclusively used for educational purposes. However, we said that the evidence established that the faculty housing units were not owned or used for financial gain or profit to either the owner or user.

From the foregoing we deduce the rule to be that property is not used for financial gain or profit to either the owner or user if no part of the income from the property is distributed to the owner's or user's members, directors, or officers, or to private individuals. Applying the rule to the evidence in this case, it is clear that there was

no financial gain or profit to either the owner or users of the leased space.

Was the leased space owned and used exclusively for charitable purposes? While we have said that it is the exclusive use of property that determines its exempt status, *Nebraska Conf. Assn. Seventh Day Adventists v. Bd. of Equalization*, 179 Neb. 326, 138 N.W.2d 455 (1965), the Constitution and statute also require that the property be owned for an exempt purpose. In our examination of the Constitution and the statute, we find no requirement that the ownership and use must be by the same entity. In fact, reference to "either the owner or user" in the last part of the sentence of the constitutional provision quoted indicates to us that ownership and use may be by separate entities.

In *Sisters of Charity, etc. v. County of Bernalillo*, 93 N.M. 42, 596 P.2d 255 (1979), the owner of the property, a charitable organization, leased a portion of its property to a wholly owned subsidiary which was also a charitable organization with the same purposes. The court granted exemption from taxes under those circumstances. The court said: "The recent trend in the United States is consistent with our holding. The notion that ownership and operation of the subject property must coincide in a single legal entity in order for property to qualify for a charitable exemption has been rejected in recent years in a number of other jurisdictions." (Citations omitted.) *Id*. at 45, 596 P.2d at 258.

Ownership by United Way, a charitable organization, is undisputed; therefore, the ownership test is met.

We have two "uses" in this case: the lessee charitable organizations' use of the leased space and United Way's use of the leased space for income. The exclusive use of the space for charitable purposes by Omaha Council of Campfire Girls and Greater Omaha Community Action is not questioned. The real issue is whether United Way's "use" of the leased space by leasing it to charitable corporations at substantially less than fair market rental rates is an exclusive use of that space for charitable

purposes by United Way.

There are no Nebraska cases on point. Leases of space for business purposes have resulted in a denial of exemption in such cases as *Y.M.C.A. of Omaha v. Douglas County*, 60 Neb. 642, 83 N.W. 924 (1900), and *Young Men's Christian Ass'n v. Lancaster County*, 106 Neb. 105, 182 N.W. 593 (1921). However, this court has also held inferentially that charges to teachers of a percentage of their salaries as rent for houses they occupied on or near school grounds did not defeat an exemption from taxes, because the property was used for school purposes. *Nebraska Conf. Assn. Seventh Day Adventists v. Bd. of Equalization, supra.* We determined in that case the dominant use of the houses was educational, because faculty members were required to live in their assigned residences and they used them for student meetings and counseling.

We conclude that the rental agreed to by the parties in this case shows the use of the property was not for a business purpose but, rather, for a charitable use. The result of the leases was financial assistance to the charitable organizations, which aided them in the performance of their charitable activities.

Exclusive use of property for exempt purposes is required, and it has been established in this case. That the use is by different entities is of no consequence.

The evidence further shows that the use of the Law Center by the Bar Association and NCLE is use for charitable or educational purposes.

In *Nebraska Conf. Assn. of Seventh Day Adventists v. County of Hall*, 166 Neb. 588, 598, 90 N.W.2d 50, 55 (1958), we said:

This state is committed to the doctrine that in determining whether or not property is within a tax exemption provision, the use of the property and not the status or character of the owner of the property controls. In Academy of the Sacred Heart v. Irey, 51 Neb. 755, 71 N.W. 752, this court said: "It is the exclusive use of the property which determines its exempt character. If it is

devoted exclusively to educational purposes, it is not liable to taxation, unless such use is not direct, but remote. * * * The sole constitutional and statutory requirement to create the exemption is that the property shall be devoted exclusively for school or some other specified exempt purpose * * *."

In *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 362-64, 133 N.W.2d 455, 459-60 (1965), we said:

This court on many occasions has passed upon the specific tax exemption provisions with which we are here concerned. It is well settled that provisions exempting property from taxation are to be strictly construed; that their operation should not be extended by construction; and that the power and right of the state to tax are presumed and the exemption must be clearly granted. This does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the Legislature but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption. Doane College v. County of Saline, 173 Neb. 8, 112 N.W.2d 248.

The theory that the rule requiring strict construction of a tax exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. A liberal and not a harsh or strained construction is to be given to the terms "educational," "religious," and "charitable" in order that the true intent of the constitutional and statutory provisions may be realized. The judicial interpretation of such statute should always be reasonable. Young Men's Christian Assn. v. Lancaster County, 106 Neb. 105, 182 N.W. 593, 34 A.L.R. 1060. The term "religious" has been held to require neither the profession of a sectarian creed, nor the formal dedication or occupation of property to promote the objects and purposes of a faith thus expressed. This court has said that education "may be particularly directed to either mental, moral or physical faculties, but in its broadest and best

sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical." Ancient and Accepted Scottish Rite v. Board of County Commissioners, 122 Neb. 586, 241 N.W. 93, 81 A.L.R. 1166.

The word "charitable" has been held to mean something more than mere alms-giving or the relief of poverty and distress and it has been given a significance broad enough to include practical enterprises for the good of humanity operated at a moderate cost to those who receive the benefits. Young Men's Christian Assn. v. Lancaster County, *supra*.

In *Bethphage Com. Servs. v. County Board*, 221 Neb. 886, 890, 381 N.W.2d 166, 169-70 (1986), we said:

In substance, the County contends that activities occurring at group homes are merely incidental to operation of the facilities as a dormitory or residence for disabled persons. We cannot agree with the County's myopic view of the educational function found in the group homes.

Education should not be determined by some quantitative analysis of a formal curriculum but may be measurable in reference to training received as reflected in an individual's enhanced behavior. In its most basic sense education is simply development, as fully as possible, of an individual's given capacity, preferably for desirable qualities. Because they are special people, the residents of the group homes receive special training—education—for life beyond Bethphage. Thus, the activities at the group homes are educational within the meaning recognized by this court in *Ancient and Accepted Scottish Rite v. Board of County Commissioners*, [122 Neb. 586, 241 N.W. 93 (1932)].

With respect to NCLE, the evidence shows that its use of the property is exclusively for educational purposes. It has no other purpose than to carry on a continuing legal educational program for the benefit of lawyers and members of the public. Its use of the property satisfies all of the requirements for

exemption from taxation.

With respect to the Bar Association, its use of the property is to some extent educational, but that is not its dominant use of the property. Its use of the property is, however, in many respects charitable. In *United Community Services v. The Omaha National Bank*, 162 Neb. 786, 791, 77 N.W.2d 576, 582 (1956), we said:

> [C]harity is . . . "a gift . . . for the benefit of an indefinite number of persons, by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or *otherwise lessening the burdens of government.*"

(Emphasis supplied.)

Although many of the services of the Bar Association to the public are free, "charitable," as used in this situation, means that the Bar Association performs services at no expense to the state which the state would otherwise be required to perform. Prime examples of its charitable activities in this respect are the examination and investigation of candidates for admission to the bar and the system for discipline and regulation of the practice of law within the state. All of these activities are performed by the association at no expense to the state and under the direction of this court. Without the assistance of the Bar Association in these matters, the state would have to provide the necessary personnel and facilities to perform the same functions.

While there may be some activities of the Bar Association that are not educational or charitable, they are but incidental in nature and do not constitute the primary or dominant use of the Law Center by the Bar Association.

In my opinion, the record establishes that the application of the Bar Foundation for exempt status of the Law Center for that part used by the Bar Foundation, the Bar Association, and NCLE should have been granted.

WHITE and GRANT, JJ., join in this dissent.